281 P.2d 391

Ray S. TANNER, Plaintiff and Appellant,

v.

PILLSBURY MILLS, Inc., and Walter Bryson, Defendants and Respondents.

No. 8216.

Supreme Court of Utah.

March 29, 1955.

Warwick C. Lamoreaux, Bell & Bell, Salt Lake City, for appellant.

Howell, Stine & Olmstead, Ogden, Peter W. Billings, Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from directed verdicts in Pillsbury's favor as to 1) a count sounding in slander and as to 2) one alleging a conspiracy with defendant Bryson to prevent plaintiff from incorporating, and 3) from a directed verdict in Bryson's favor as to

the conspiracy, and 4) from a judgment granting Bryson a new trial; together with a Cross-Appeal based on the contention that the trial court erroneously failed to direct a verdict for Bryson on the slander count. Affirmed, with no costs awarded.

 Plaintiff was indebted to defendants: to Bryson for turkey poults and to Pillsbury for turkey feed. Turner worked for Pillsbury, and it was because of his alleged words and actions that plaintiff sought to hold the company. One day Bryson and Turner inquired of one Lubeck, plaintiff's representative, as to plaintiff's whereabouts. During the conversation Bryson and Turner allegedly indulged in some unkind epithetical language concerning plaintiff. An examination of the voluminous record convinces us that as to Turner, nothing slanderous can be attributed,—the only circumstance which might suggest remotely to the contrary, being an occasional nod of the head, which counsel for plaintiff, by examining the witnesses, clearly established to be a gesture signifying either "yes" or "no," or an "acquiescence" or a "disagreement,"—proof so far removed from the claimed fact, so impotent in establishing a slander, and so closely akin to conjecture as to be worthy of little more than its mention here. As to Bryson there appears to be a jury question.

 We are also convinced that the evidence does not show in any way that Turner was a party to a conspiracy. Bryson, the only other one claimed to have conspired with Turner, therefore could not have conspired and the verdict in his favor with respect to the conspiracy was proper. Counsel for plaintiff concedes that when Bryson and Turner approached Lubeck, they had no conspiratorial intentions, but only, as counsel for plaintiff himself puts it, "had a mission of legitimate inquiry respecting their accounts,"—although events of a prior chronology were the subject of considerable treatment in plaintiff's brief. We cannot agree that what Turner said or did at the meeting with Lubeck could be construed as constituting active participation in a joint plan, to prevent plaintiff from forming a corporation, which plan was conceived and born of malice at the meeting itself.

 Bryson apparently used language to the effect that plaintiff, by disposing of mortgaged birds, had committed a criminal offense for which he could be incarcerated,[1] the exact wording of which is the subject of some dispute. Bryson urges that whatever was said, it was clear that plaintiff had disposed of some of the birds without *written* consent, hence violated the statute, making Bryson's language true and thus not actionable. We are not prepared to say that Bryson is correct in his contention, under the facts of this case, where apparently there was an acquiescence in the

---

1. Title 9–1–13, Utah Code Annotated 1953.

sale of the birds and where Bryson may or may not have used stronger language than that imputing to plaintiff the role of only a misdemeanant. The erroneous instruction requires that we send the case back for a new trial where either the court or a jury will determine the facts anew, such as the presence or absence of written consent, the words spoken, and any other circumstances as they might relate both to such consent and words. We are not constrained to lay down a rule absolute that mere failure to obtain written consent to dispose of personal property under all circumstances would constitute an offense under the statute. Hardly could any criminal intent or offense be attributed to one, for instance, who, without written consent, disposed of the birds to the mortgagee in satisfaction of the mortgaged debt, or to a mortgagor who transferred the birds to a third person, without written consent, but in exchange for payment by such third person of the mortgage debt. Other examples could be added. In this connection, we believe the wording of the statute to the effect that one so disposing of the property without written consent "shall be *deemed* guilty," when taken in the light of all the other wording of the statute and its purpose, does not connote (as it might in other instances) absolute liability for failing to do an act required by the statute, but on the contrary calls for a construction making for criminal accountability only where both the letter and the spirit of the act have been violated.

Defendants claim the words were conditionally privileged and thus invited an instruction as to whose burden it was to prove "malice" or "abuse of privilege," or the lack of it. The court's instruction put the burden of showing that there was no malice or abuse of privilege on the *defendants* when it should have instructed that the plaintiff had the burden of proving that there was malice or abuse of privilege. The instruction was erroneous and prejudicial, entitling Bryson to a new trial.[2] It is no answer to say the court should have found as a matter of law that the words were privileged, as counsel urges, since there appears to be evidence touching the relationship between the parties or the lack of it, the bona fides, the nature and extent of the language used and its implications, which properly lend themselves to jury determination.

McDONOUGH, C. J., WADE, J., and DAVID T. LEWIS, District Judge, concur.

CROCKETT, J., concurs in the result.

WORTHEN, J., having disqualified himself, did not participate herein.

2. See: Restatement of Torts, Sec. 613; Combes v. Montgomery Ward & Co., Utah, 228 P.2d 272; Spielberg v. A. Kuhn & Bro., 39 Utah 276, 116 P. 1027.