2006 UT 44

**Julian Dean HATCH, Plaintiff and Respondent,**

v.

**Larry DAVIS, Defendant and Petitioner.**

No. 20050078.

Supreme Court of Utah.

Aug. 11, 2006.

Rehearing Denied Sept. 20, 2006.

Budge W. Call, Salt Lake City, for respondent.

James C. Bradshaw, Ann Marie Taliaferro, Salt Lake City, for petitioner.

NEHRING, Justice:

¶ 1 This case brings to this court a long-standing feud between two Boulder, Utah residents, Julian Dean Hatch and Larry Davis.

¶ 2 Mr. Davis served as manager of the Anasazi State Park for over thirty years until his retirement in 2001. In 1988, Mr. Hatch moved to Boulder and sought employment at the park. Mr. Hatch was not offered a job. This rejection apparently triggered a ten-year campaign in which Mr. Hatch sought the removal of Mr. Davis from his park management position and Mrs. Hatch from her position as post-mistress of the town of Boulder.

¶ 3 The acrimony between the men ultimately spilled over into court when Mr. Hatch sued Mr. Davis for damages stemming from an alleged assault outside the town post office. Mr. Davis denied the allegation and counterclaimed. Mr. Davis claimed that Mr. Hatch's conduct amounted to abuse of process, malicious prosecution, and intentional infliction of emotional distress. A jury rejected Mr. Hatch's assault claims. Although the trial court dismissed Mr. Davis's malicious prosecution claim, the jury found for Mr. Davis on each of his surviving causes of action. Based on the jury verdict, the trial court entered judgment in favor of Mr. Davis for $130,542.93. Mr. Hatch appealed.

¶ 4 The court of appeals held that, even though the trial court dismissed Mr. Davis's malicious prosecution claim before it could be sent to the jury, the trial court erred by failing to dismiss the claim earlier, before trial. In a footnote, the court of appeals commented that, even though the malicious prosecution claim did not go to the jury, the trial court's failure to dismiss it before the trial commenced "may have allowed introduction of evidence and argument by counsel

that tainted the jury's consideration of the issues submitted to it." *Hatch v. Davis*, 2004 UT App 378, ¶ 20 n. 6, 102 P.3d 774.

## ANALYSIS

### I. THE COURT OF APPEALS' RULING ON THE CLAIM OF MALICIOUS PROSECUTION UNDERMINES THE ENTIRE VERDICT

¶ 5 The court of appeals reversed outright the award based on abuse of process and remanded Mr. Davis's claim for intentional infliction of emotional distress for a new trial. We granted certiorari to consider three questions: (1) whether Mr. Hatch waived any entitlement to a jury instruction on his statute of limitations defense to Mr. Davis's claim of intentional infliction of emotional distress by failing to offer a legally correct instruction on that issue, (2) whether Mr. Davis was entitled to the benefit of an exception to the "presence" rule for intentional infliction of emotional distress, and (3) whether Mr. Davis sufficiently alleged that Mr. Hatch had committed a "wilful act" as part of his claim for abuse of process.

¶ 6 We postpone our analysis of these questions to consider the implications of the court of appeals' dismissal of Mr. Davis's malicious prosecution claim. Neither party sought certiorari review of any issue relating to this cause of action. The manner in which the court of appeals dispatched the malicious prosecution claim leaves us with a sense of uncertainty about how to interpret the court's decision on the claims we have agreed to review.

¶ 7 It is unclear to us whether the court of appeals intended that its reversal of the trial court on this issue mandated a new trial on Mr. Davis's remaining claims. Because we can discern no other reason for the court of appeals to have taken up the question of when Mr. Hatch's motion to dismiss should have been granted, we conclude that the court contemplated this portion of its holding to undermine the legitimacy of the entire verdict.

---

1. The court of appeals erred in its opinion as it was the plaintiff's rather than the "defendant's motion for summary judgment" that was denied.

### II. CERTIORARI WAS IMPROVIDENTLY GRANTED ON THE STATUTE OF LIMITATIONS ISSUE

■ ¶ 8 Against this backdrop, we turn our attention to the first issue on certiorari: the matter of Mr. Hatch's statute of limitations defense to Mr. Davis's claim of intentional infliction of emotional distress. Mr. Hatch took issue with two trial court rulings relating to the statute of limitations. First, he claimed that the trial court improperly denied his motion for summary judgment on the statute of limitations issue. Second, he also contended that the trial court erred when it refused to permit his statute of limitations defense to go to the jury. This is the only statute of limitations issue that concerns us, but it injects an odd wrinkle into our analysis.

¶ 9 We granted certiorari to answer this question: Did Mr. Hatch waive his right to a jury instruction when he failed to submit for consideration a legally correct instruction? One might read the court of appeals' opinion, perhaps even re-read it, and still wonder where this question came from. The answer is not immediately evident. We will therefore endeavor to chart the route that led to the issue of waiver.

¶ 10 Mr. Hatch moved for summary judgment on his statute of limitations defense. The trial court denied the motion.[1] Before the case was submitted to the jury, Mr. Hatch presented a statute of limitations instruction to the trial court. The trial court refused to give the instruction because it believed that there was insufficient evidence to send the statute of limitations issue to the jury. In the words of the court, "there is really no legitimate statute of limitations issue."

¶ 11 The trial court did not, therefore, reject Mr. Hatch's proposed statute of limitations instruction because it failed to properly state the law, but rather because it concluded that Mr. Hatch had failed to mount a sufficient statute of limitations case to merit

*Hatch v. Davis*, 2004 UT App 378, ¶ 45, 102 P.3d 774.

sending it to the jury. The trial court's decision not to instruct the jury on the statute of limitations was not a ruling on the sufficiency of the contents of Mr. Hatch's proposed instruction but is more accurately characterized as the grant of a directed verdict against Mr. Hatch on his statute of limitations defense.

¶ 12 The court of appeals appears to have interpreted the events concerning the statute of limitations this way. Its discussion of the statute of limitations never touched on the content of Mr. Hatch's proposed instruction. Instead, the court of appeals examined the record [2] and concluded that it contained facts sufficient to send the statute of limitations issue to the jury. It was on this basis and not on the adequacy of Mr. Hatch's proposed instruction that the court of appeals reversed the trial court.[3]

¶ 13 Before this court, Mr. Davis has presented the contest over the statute of limitations as a traditional jury instruction skirmish. He claims that Mr. Hatch never properly objected to the trial court's refusal to give his proposed instruction and that he cannot therefore raise his complaint for the first time on appeal. Mr. Davis attempts to bring novelty to what he perceives, incorrectly in our view, as a generic fight over jury instructions by framing the question as: Did Mr. Hatch waive any entitlement he may have had to a jury instruction on the statute of limitations because he failed to offer a legally accurate instruction?

¶ 14 This question would have appeal to us as an issue of first impression if it arose in a setting where a party objected to the content of an erroneous instruction, where the objection was based on an incorrect statement of law contained in that party's competing instruction. This case presents a much different scenario. As we have noted, the trial court's rejection of Mr. Hatch's statute of limitations instruction was incidental to its grant of a de facto motion for directed verdict. The legal sufficiency of Mr. Hatch's proposed instruction had little, if anything, to do with either the trial court's ruling or the court of appeals' review of that decision.

¶ 15 We accordingly conclude that we acted improvidently when we granted certiorari to consider the question of whether Mr. Hatch waived his entitlement to a legally correct instruction and decline to consider it.

## III. UTAH RECOGNIZES THAT EXCEPTIONS TO THE "PRESENCE" RULE OF THE TORT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS MAY EXIST

¶ 16 We next take up the question of whether the evidence presented at trial entitled Mr. Davis to the benefit of an exception to the "presence" requirement for intentional infliction of emotional distress. Generally, a person cannot recover intentional infliction of emotional distress damages based on outrageous conduct visited upon a family member without being present when the conduct took place. Restatement (Second) of Torts § 46(2) (1965). There are exceptions to this general rule. Mr. Davis insists that those exceptions apply to the facts surrounding Mr. Hatch's conduct di-

---

2. The incomplete record on appeal assembled by Mr. Hatch was a topic of some interest before the court of appeals and also before us. We note that, although the court of appeals rejected Mr. Hatch's challenge to the sufficiency of the evidence supporting the jury's verdict for Mr. Davis on his intentional infliction of emotional distress claim, it nevertheless found the record to be complete enough to find that a factual question was present concerning the statute of limitations that required reversal of the trial court's directed verdict against Mr. Hatch. We leave for another day the issue of to what extent the obligations imposed by Utah Rule of Appellate Procedure 11(e)(2) apply to an appeal from a motion for a directed verdict.

3. We are somewhat confused about the source of the facts relied on by the court of appeals to find that the trial court erred when it declined to submit the statute of limitations issue to the jury. The court appears to have been reviewing Mr. Hatch's challenge to the trial court's denial of his motion for summary judgment on the statute of limitations issue inasmuch as it expressly affirmed the trial court's denial of that motion. Did the court of appeals then restrict the scope of its review to the record as it existed within the context of the motion for summary judgment? We are unable to tell from the court's opinion. Clearly, however, the trial record was the appropriate record to review for the purpose of determining whether the trial court properly refused to instruct the jury on the statute of limitations.

rected at Mr. Davis's wife outside of Mr. Davis's presence.

¶ 17 The court of appeals held that Mr. Davis was not eligible for the exception to the "presence" rule and ordered that on remand no evidence of Mr. Hatch's conduct toward Mrs. Davis could be admitted to establish intentional infliction of emotional distress. Our ability to analyze the merits of Mr. Davis's claim to a "presence" rule exception is stymied, however, because we do not have the benefit of a record from which to glean with sufficient confidence the evidence that might bear on this issue.

¶ 18 The incomplete state of the record leaves us once again perplexed over apparent inconsistencies within the court of appeals' treatment of this issue. Just as we encountered conceptual difficulty harmonizing the court of appeals' decision to reject Mr. Hatch's sufficiency of evidence challenge because he failed to comply with the requirements of Utah Rule of Appellate Procedure 11(e)(2) with the court's willingness to overlook the fragmentary state of the record when it reversed the trial court's refusal to send Mr. Hatch's statute of limitations defense to the jury, so we now struggle to justify joining the court of appeals in forgiving Mr. Hatch's failure to provide a complete record to aid our review of whether sufficiently compelling circumstances exist to warrant application of an exception to the "presence" rule.

¶ 19 In an effort to chart a course through these logical crosscurrents, we take a closer look at Utah Rule of Appellate Procedure 11(e)(2). Rule 11(e)(2) is titled "Transcript required of all evidence regarding challenged finding or conclusion," and states:

> If the appellant intends to urge on appeal that a finding or conclusion is unsupported by or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion. Neither the court nor the appellee is obligated to correct appellant's deficiencies in providing the relevant portions of the transcript.

Utah R.App. P. 11(e)(2).

¶ 20 The comments to the rule explain the consequences of an appellant's submission of an incomplete record—"the court is unable to review the evidence as a whole and must therefore presume that the verdict was supported by admissible and competent evidence," and that we "will presume the correctness of the disposition made by the trial court." *See* notes to Utah R.App. P. 11(e)(2) (citing *Sampson v. Richins,* 770 P.2d 998, 1002 (Utah Ct.App.1989); *State v. Rawlings,* 829 P.2d 150 (Utah Ct.App.1992)).

¶ 21 Mr. Hatch admitted at oral argument that he did not provide a complete record. As one member of this court aptly noted during oral argument, Mr. Hatch "cherry picked" the testimony he provided to the court of appeals and this court. Our review of the record confirms that the record is not complete.

¶ 22 Rule 11(e)(2) reserves considerable discretion to an appellate court to selectively apply its authority to dismiss an appeal in whole or in part. A court's discretionary decision-making is guided by the nature of the shortcomings in the record as they relate to the issues to be decided. Thus, a complete record might be required to fully consider some issues but not others.

¶ 23 It is clear that a comprehensive record is necessary to conduct a sufficiency of the evidence review. We therefore readily understand why the court of appeals declined to consider Mr. Hatch's sufficiency of the evidence challenge to the intentional infliction of emotional distress verdict based on the partial and selective record provided by Mr. Hatch. There is simply no available method to determine whether or not Mr. Davis presented sufficient evidence to demonstrate outrageous conduct by Mr. Hatch to activate the exception to the "presence" rule. We believe that a comprehensive record is necessary to reach a conclusion that we can defend with conviction concerning whether Mr. Hatch's behavior directed at Mrs. Davis qualifies as an exception to the "presence" rule.

¶ 24 Were we to limit our inquiry to the question of whether Utah recognizes *any* exceptions to the "presence" rule, no reference to the record would be necessary because that issue is a pure question of law.

However, the question we accepted for certiorari review is not a pure question of law. It asked "[w]hether petitioner [Mr. Davis] demonstrated an exception to the 'presence' rule for intentional infliction of emotional distress." So framed, the question assumes that we have recognized an exception to the "presence" rule and asks us to review whether the court of appeals erred when it concluded that the facts presented by Mr. Davis in this case concerning Mr. Hatch's treatment of Mrs. Davis did not fall within that exception. This is a question of mixed law and fact. It is one that requires a review of the record—the complete record. The absence of a record to aid in discovering an answer to this question is the situation that rule 11(e)(2) was created to prevent. We therefore conclude that the court of appeals erred when it excused Mr. Hatch's failure to provide a complete transcript of the trial proceedings and foreclosed Mr. Davis from presenting evidence at the new trial of his claim for intentional infliction of emotional distress concerning Mr. Hatch's conduct directed at Mrs. Davis.

¶ 25 In most instances, the presumption of correctness of the verdict would provide finality to an appeal flawed by the presentation of an inadequate appellate record. That is not the case here. As a consequence of the court of appeals' unchallenged holding that the trial court's error in delaying its dismissal of Mr. Davis's malicious prosecution claim tainted the entire jury verdict, Mr. Hatch is entitled to a new trial on Mr. Davis's claim of intentional infliction of emotional distress, notwithstanding the defective state of his appellate record.

¶ 26 The state of the law in Utah relating to the "presence" rule will then be of some importance. We therefore take this occasion to comment on it. We agree with the court of appeals that conduct which occurs outside the presence of a plaintiff may not contribute to a claim of intentional infliction of emotional distress except under particularly compelling circumstances. *Hatch v. Davis*, 2004 UT App 378, ¶ 52, 102 P.3d 774.

¶ 27 What sort of circumstances are sufficiently atrocious to give rise to the presence exception? In considering whether conduct triggers the exception, a finder of fact may consider (1) the relationship of the target of the conduct to the plaintiff, (2) the relationship between the person committing the conduct and the plaintiff, and (3) the egregiousness of the conduct. Finally, (4) a plaintiff must establish that the conduct was undertaken, in whole or in part, with the intention of inflicting injury to the absent plaintiff.

¶ 28 It is certain that the exact dimensions of the exception to the "presence" rule will acquire greater clarity as the law in Utah evolves. This much should be clear at the outset: the bar is high. We agree that the Restatement limitations are justified by a practical need to limit recovery for emotional distress. The mental distress claim of a woman who witnessed her husband's murder is more compelling—and perhaps more genuine—than the same claim from a woman who learns that her husband was murdered ten years earlier. *See* Teresa K. Jensen, 30 *Land & Water L.Rev.* 231 (1995). The "presence" rule has gained acceptance as a prudential check on a tort that the law has rightfully singled out for strict management, "because of the fear of fictitious or trivial claims, distrust of the proof offered, and the difficulty of setting up any satisfactory boundaries to liability." Restatement (Second) of Torts § 46(2) (1965).

¶ 29 Still, the exception is an important one. It reflects the law's recognition that certain conduct not committed in one's presence can nevertheless be so injurious to an individual, despite the fact that he is not present to witness it, that our societal values would be offended were we not to provide a remedy at law. Unusually offensive behavior can and should trigger the exception. An example of such an egregious case is *R.D. v. W.H.*, 875 P.2d 26 (Wyo.1994), where a stepparent provided the means for suicide to his stepdaughter, and she subsequently did commit suicide outside of the presence of her husband and small child. The Wyoming court found that the facts fell within the exception to the "presence" rule because the plaintiffs were exposed to the "immediate aftermath of the tragic results of Appellee's

outrageous conduct." *Id.* at 34. Thus, where the defendant's actions are sufficiently egregious, he may be liable to a remote plaintiff for intentional infliction of emotional distress. *See also H.L.O. v. Hossle,* 381 N.W.2d 641 (Iowa 1986); *Nancy P. v. D'Amato,* 401 Mass. 516, 517 N.E.2d 824, 827–28 (1988).

¶ 30 On remand, the facts of this case may well satisfy the presence exception. Mrs. Davis, as far as we know, had no relationship with Mr. Hatch outside of her duties as postmistress. She was truly a noncombatant in the Davis–Hatch feud. We leave to the fact finder the task to determine Mr. Hatch's intent and whether his conduct was sufficiently egregious.

¶ 31 Like the Wyoming court, "[w]e believe that it is generally a better practice to limit recovery for intentional infliction of emotional distress to plaintiffs who were present when the outrageous conduct occurred." *R.D.,* 875 P.2d at 33. It is a rare case which presents a factual situation demanding special consideration regarding the presence requirement.

¶ 32 In sum, we support the rigorous scrutiny applied to attempts to expand the reach of intentional infliction of emotional distress. These limitations, such as the "presence" rule, are entirely appropriate in view of the difficulties of proof associated with claims of emotional distress and only the most egregious cases will carve out even limited exceptions to them. Yet the door to recovery remains open for the case where conduct is so egregious that the plaintiff's circumstances cry out for relief.

## IV. ABUSE OF PROCESS REQUIRES AN ULTERIOR PURPOSE IN THE USE OF PROCESS AND A CORROBORATING ACT

■ ¶ 33 Finally, we take up the question of whether Mr. Davis adequately alleged that Mr. Hatch committed a "wilful act" in furtherance of an abuse of process. The court of appeals concluded that Mr. Davis's pleading was insufficient, and we agree.

■ ¶ 34 The misuse of legal process becomes actionable when it is used " 'primarily to accomplish a purpose for which it is not designed.' " *Hatch,* 2004 UT App 378, ¶ 33, 102 P.3d 774 (quoting *Gilbert v. Ince,* 1999 UT 65, ¶ 17, 981 P.2d 841). We have characterized the "essence" of the tort of abuse of process to be "a perversion of the process to accomplish some improper purpose." *Crease v. Pleasant Grove City,* 30 Utah 2d 451, 455, 519 P.2d 888, 890 (1974).

¶ 35 In this case, there is no question that Mr. Davis alleged that Mr. Hatch had instigated lawsuits against him for the improper purpose of "engag[ing] in a campaign of hate and terror towards the residents of Boulder, most specifically toward Larry and Judy Davis," and "us[ing] the legal system in an attempt to intimidate those with whom he deals."

■ ¶ 36 While these allegations satisfy the "essence" of the tort, they are not enough to fully make out a claim. The elements of abuse of process reach beyond its essence. To state a claim for abuse of process, a party must allege both "an ulterior purpose" and " 'a wilful act in the use of the process not proper in the regular conduct of the proceeding.' " *Hatch,* 2004 UT App 378, ¶ 34, 102 P.3d 774 (quoting William Prosser, *Law of Torts* § 121 at 857 (4th ed.1971)).

¶ 37 The focus of the "essence" of abuse of process is on the tortfeasor's motive. But motive is not enough. The tortfeasor must also have undertaken a "wilful act." It is easy to slip into the conceptual trap of simply defining the "wilful act" as the legal process that the tortfeasor pursues according to his ulterior motive. Such a definition would, however, render the "wilful act" requirement superfluous. Under it, a party would only be required to link a bad motive to an event having the hallmarks of legal process to state a claim.

¶ 38 This is what Mr. Davis has done in his pleadings. He has yoked Mr. Hatch's courthouse misadventures to his ill-intentioned crusade to intimidate the inhabitants of Boulder. There is nothing in his allegations that distinguish Mr. Hatch's conduct from process that is merely accompanied by spite, ill-will, or any of the other less agreeable human

emotions that frequently attach themselves to court papers.

■ ¶ 39 To satisfy the "wilful act" requirement, a party must point to conduct independent of legal process itself that corroborates the alleged improper purpose. *Id.* ¶ 35 (citing *Vallance v. Brewbaker,* 161 Mich. App. 642, 411 N.W.2d 808, 810 (1987)). Use of legal process with a bad motive alone "does not defeat that right;" a corroborating act of a nature other than legal process is also necessary. *Young v. Motor City Apartments Ltd. Dividend Hous. Ass'n,* 133 Mich. App. 671, 350 N.W.2d 790, 796 (1984). It is this corroborating act that permits true legal process to be branded "a perversion of the process." *Id.* For example, the plaintiff's abuse of process claim in *Early Detection Center, PC v. New York Life Insurance Co.* was dismissed because the acts "alleged as the irregular acts" were no more than "the filing of a 'groundless' suit." 157 Mich.App. 618, 403 N.W.2d 830, 835 (1986). In *Templeton Feed & Grain v. Ralston Purina Co.,* however, the court affirmed an abuse of process judgment where the defendant used legal process to seize turkeys at the height of the Thanksgiving season in order to force payment of a debt. The payment demands communicated by the defendant immediately after the seizure of the turkeys served as the "wilful act." The payment demands were not integral to the proceeding that resulted in the seizure of the turkeys, but they collaborated the perverse character of those proceedings. 69 Cal.2d 461, 72 Cal.Rptr. 344, 446 P.2d 152, 155 (1968).

¶ 40 The "wilful act" requirement is consistent with the notion that an "improper act may not be inferred from the motive." The "wilful act" element can be understood as an obligation imposed on the complaining party to allege that the tortfeasor has confirmed through his conduct his improper ulterior motive for employing legal process against the plaintiff. In this respect, the "wilful act" element exists to be in the service of the "ulterior purpose" core that makes up the "essence" of abuse of process. It signifies that in the eyes of the law sufficient grounds exist to believe that the complaining party may be exposed to injury that may not reasonably be redressed through the imposition of sanctions or like measures within the litigation forum itself. Mr. Davis alleged the existence of no act that met this standard. Accordingly, we affirm the court of appeals.

## CONCLUSION

¶ 41 We decline to rule on the statute of limitations claim, since the issue does not present the question of law which was initially presumed. On Mr. Davis's intentional infliction of emotional distress claim, we remand for new trial. Finally, we affirm the court of appeals' dismissal of the defendant's abuse of process claim.

¶ 42 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING'S opinion.