**2020 UT App 137**

## THE UTAH COURT OF APPEALS

RACHEL ESKAMANI AND PEGGY HUNT,
Appellants,
*v.*
AUTO-OWNERS INSURANCE COMPANY,
Appellee.

Opinion
No. 20190450-CA
Filed October 8, 2020

Third District Court, Salt Lake Department
The Honorable Royal I. Hansen
No. 150905157

William J. Hansen, Karra J. Porter, Bryson R. Brown,
and Kristen C. Kiburtz, Attorneys for Appellants

Richard K. Glauser, Albert W. Gray, Michael W.
Wright, and Clayton H. Rather, Attorneys
for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which JUDGES JILL
M. POHLMAN and RYAN M. HARRIS concurred.

APPLEBY, Judge:

¶1     Rachel Eskamani and Peggy Hunt[1] appeal the district
court's grant of summary judgment in favor of Auto-Owners
Insurance Company (Auto-Owners) and dismissal of their
claims for wrongful use of civil proceedings and abuse of
process. Eskamani also appeals the district court's ruling
denying her request for discovery sanctions against Auto-
Owners. We affirm in part and reverse in part.

---

1. Peggy Hunt is the trustee of Eskamani's bankruptcy estate.

BACKGROUND[2]

¶2     This appeal is the third in a series of three lawsuits involving Eskamani and Auto-Owners or its insured. In December 2009, a café owned by Eskamani was damaged when a contractor ruptured a nearby high-pressure water line, causing water to flood the premises. That same month the contractor, through its insurance carrier, Auto-Owners, tendered Eskamani a partial payment for the initial costs of cleanup and repair of the café.

¶3     In November 2010, Eskamani filed suit against the contractor, alleging she had not been paid in full for the water damage sustained in the flood (Flooding Suit).

¶4     Approximately a year later, Eskamani became frustrated with the contractor and, more specifically, Auto-Owners. She posted online—as well as on signs displayed on the windows of her café—various complaints and statements regarding Auto-Owners' handling of the insurance claim. The signs referred to Auto-Owners by name and, among other things, asked Auto-Owners to "[p]ay up in [f]ull." The dispute garnered the attention of a local television channel, which ran a report of the story on the nightly news.

¶5     Shortly thereafter, the contractor filed an offer of settlement pursuant to rule 68 of the Utah Rules of Civil Procedure. The offer, which included a dollar figure, was conditioned on Eskamani "stop[ping] all contact of whatever nature with . . . Auto-Owners" and "refrain[ing] from oral or

---

2. When reviewing a grant of summary judgment, we view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 31, 116 P.3d 323.

written publishing of any kind in relationship to . . . Auto-Owners." Eskamani rejected the offer, and litigation in the Flooding Suit continued.

¶6     In January 2012, Auto-Owners filed a complaint against Eskamani for defamation (Defamation Suit) arising from the statements she posted online and in the windows of her café regarding Auto-Owners' handling of the insurance claim and the Flooding Suit. The complaint stated three claims for relief: defamation, defamation per se, and tortious interference with existing and prospective economic relations. Auto-Owners sought injunctive relief, attorney fees, compensatory damages, and punitive damages against Eskamani.

¶7     Eskamani initially submitted a pro se response titled "Answer to Complaint & Request for Motion to Dismiss & Request for Sanctions." After considering Eskamani's motion, as well as the pleadings, the district court determined a hearing was not necessary to decide the matter and denied Eskamani's motion.[3]

¶8     Following the denial of her motion to dismiss, Eskamani retained counsel, who later filed a motion for summary judgment on Eskamani's behalf. The motion was limited in scope, arguing only that Eskamani's allegedly defamatory statements were "not capable of sustaining a defamatory meaning, as they [were] vague statements of opinion," and "even if the statements were defamatory, the statements [were] privileged and not actionable under the Fair Comment/Opinion privilege." Further, the motion asserted that because her

---

3. Eskamani did not request that the district court hold a hearing to consider this motion. Likewise, she did not make such a request in her subsequent motion for summary judgment. *Infra* ¶ 8.

"statements [were] not defamatory and not actionable," there was no basis for the tortious interference claim. Eskamani did not challenge any of the other elements Auto-Owners was required to establish to succeed on its defamation and tortious interference claims, including the element of damages. The district court in the Defamation Suit denied Eskamani's motion for summary judgment without a hearing.

¶9    In September 2012, Eskamani and the contractor settled the underlying Flooding Suit, but Auto-Owners continued to pursue the Defamation Suit against Eskamani. In July 2013, during a deposition conducted pursuant to rule 30(b)(6) of the Utah Rules of Civil Procedure,[4] Auto-Owners acknowledged it would not try to establish any actual damages in the Defamation Suit:

> We're not necessarily looking for damages, because the damages would be difficult, if not hard to prove, but we do believe we would be entitled to probably nominal damages or whatever damages the court may determine. But we do not intend to provide or try to prove any loss of business as a result of her statements.

¶10   Following the deposition, Auto-Owners filed a motion for summary judgment on its claim of defamation per se, the only one of its claims that did not require it to prove actual damages. In the memorandum supporting its motion, Auto-Owners stated it was "voluntarily dismiss[ing] its claims for tortuous [sic]

---

4. Rule 30(b)(6) permits a party to depose an organization by allowing the organization to designate one or more representatives "to testify on its behalf" "as to matters known or reasonably available to the organization." Utah R. Civ. P. 30(b)(6).

interference and defamation," each of which required Auto-Owners to prove actual damages.

¶11    Eskamani filed a cross-motion for summary judgment on the remaining claim of defamation per se. The district court[5] granted Eskamani's motion, ruling that Auto-Owners' claim for defamation per se "fail[ed] as a matter of law" because Eskamani's allegedly defamatory statements were "not capable of sustaining a defamatory meaning." It also deemed Eskamani's statements too "vague and ambiguous as to their meaning to fit within the narrowly defined [claim for d]efamation per se," and it concluded her statements were "capable of having more than one meaning" and did "not comment on the lawfulness of [Auto-Owners'] business or its conduct." Auto-Owners did not appeal this ruling.

¶12    More than a year later, Eskamani filed the action giving rise to this appeal (Tort Suit). Initially, she filed a pro se complaint against Auto-Owners alleging a series of tort claims, and the parties began conducting discovery. In October 2015, Eskamani served Auto-Owners with requests for production of documents that directed Auto-Owners to produce its "complete underlying claims files relating to" the Defamation Suit.

¶13    Eskamani later retained counsel and filed an amended complaint alleging two causes of action—wrongful use of civil proceedings and abuse of process. Auto-Owners' answer to the

---

5. Before filing this motion, Eskamani moved to disqualify the district court judge on the ground that his prior ruling against Eskamani on her motion for summary judgment could make it appear that he "lacks impartiality and is or appears to be biased against" her. Although the judge "assured" Eskamani "such was not the case," he nevertheless volunteered to recuse himself, and a new judge was assigned to preside over the matter.

amended complaint asserted for the first time an advice-of-counsel defense, alleging it filed the Defamation Suit in reliance on the advice of its attorney. Auto-Owners then amended its earlier discovery responses and produced documents supporting its new defense, after which Eskamani took the depositions of three of Auto-Owners' employees. During one deposition, an employee testified that his decision to proceed with the Defamation Suit was based in part on a written opinion by Auto-Owners' Utah attorney, a copy of which should have been "in the file" produced to Eskamani.

¶14   Eskamani thereafter served notice of the deposition of Auto-Owners' Utah attorney. But Auto-Owners asked Eskamani to postpone the deposition until after the district court had ruled on a then-pending motion for summary judgment challenging Eskamani's standing to prosecute the Tort Suit. When Eskamani refused, Auto-Owners sought relief from the court, indicating it would "voluntarily produce [its Utah attorney] once the Court has had an opportunity to review this matter and rule that [Eskamani] has standing." The court granted the requested relief, continuing the deposition "until after the Court rules on [Auto-Owners'] Motion for Summary Judgment regarding [Eskamani's] standing in this case."

¶15   In November 2016, on the final day of fact discovery, Auto-Owners supplemented its prior disclosures, producing 715 pages of documents relevant to its advice-of-counsel defense. Eskamani responded with a motion, "pursuant to Utah Rules of Civil Procedure 26, 33 and 37," asking the district court to "enter an order striking Auto-Owners' reliance-on-the-advice-of-counsel defense, precluding Auto-Owners from using 715 pages of recently-disclosed documents at trial, and barring [Auto-Owners' attorney] from testifying at trial."

¶16   The court denied the motion, reasoning that requests for sanctions "are properly addressed in the context of rule 37" of

the Utah Rules of Civil Procedure, "which provides 'the court, upon motion, may impose appropriate sanctions for the *failure to follow its orders*.'" (Quoting Utah R. Civ. P. 37(b).) But "[a]bsent the existence of such order and a failure to comply therewith, rule 37 does not authorize imposition of sanctions." The court accordingly denied Eskamani's request to strike Auto-Owners' advice-of-counsel defense.

¶17  Auto-Owners then filed a motion for summary judgment on Eskamani's remaining claims for abuse of process and wrongful use of civil proceedings. After briefing and oral argument, the district court granted the motion, concluding Eskamani had failed to present sufficient evidence to establish either claim. Eskamani timely appeals.

ISSUES AND STANDARDS OF REVIEW

¶18  Eskamani argues the district court erred in granting Auto-Owners' motion for summary judgment on her claims for wrongful use of civil proceedings and abuse of process. "We review a district court's decision to grant summary judgment for correctness, granting no deference to the district court's conclusions." *Gillmor v. Summit County*, 2010 UT 69, ¶ 16, 246 P.3d 102 (quotation simplified).

¶19  Eskamani also argues the district court erred in denying her motion to strike Auto-Owners' advice-of-counsel defense. Specifically, she asserts the court erred in ruling that a party cannot seek exclusion of untimely disclosed documents unless the nonproducing party has violated a court order. "The proper interpretation of a rule of procedure is a question of law," which we review for correctness. *Ostler v. Buhler*, 1999 UT 99, ¶ 5, 989 P.2d 1073.

ANALYSIS

I. Wrongful Use of Civil Proceedings

¶20    Eskamani first argues the district court erred in dismissing her claim for wrongful use of civil proceedings. She contends the court improperly determined that the interlocutory order denying her "limited motion for summary judgment in the Defamation Suit" established probable cause "for all claims brought against [her] in that suit." We agree.

¶21    Wrongful use of civil proceedings is a tort that "consists in instituting or maintaining civil proceedings for an improper purpose and without a justifiable basis." *Gilbert v. Ince*, 1999 UT 65, ¶ 19, 981 P.2d 841. Our supreme court has determined that to succeed on such a claim, one must satisfy the criteria set forth in the Restatement (Second) of Torts. *Id.* The Restatement provides that one is "subject to liability . . . for wrongful civil proceedings" if he or she brings suit against another (1) "without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim" and (2) "the proceedings . . . terminated in favor of the person against whom they [were] brought." *Id.* (quoting Restatement (Second) of Torts § 674 (Am. Law Inst. 1997)). In this context, probable cause has two elements. First, the person or entity initiating the civil proceeding must "reasonably believe[] in the existence of the facts upon which the claim is based" and, second, they must "correctly or reasonably believe[] that under those facts the claim may be valid under the applicable law." *Id.* (quotation simplified).

¶22    Eskamani's amended complaint in the Tort Suit alleged Auto-Owners was liable for wrongful use of civil proceedings for "bringing and prosecuting the Defamation Suit" "without probable cause" and primarily for improper purposes. Auto-Owners moved for summary judgment in the Tort Suit on the

narrow ground that, as a matter of law, Eskamani could not establish Auto-Owners lacked probable cause to initiate the Defamation Suit. Citing *Parrish v. Latham & Watkins*, 400 P.3d 1 (Cal. 2017), a California case, Auto-Owners argued the court's denial of Eskamani's first motion for summary judgment in the Defamation Suit conclusively established Auto-Owners had probable cause to bring and maintain the entire Defamation Suit pursuant to the "interim adverse judgment rule." Under this rule, the denial of a defensive motion for summary judgment in the underlying case ordinarily "establishes probable cause to bring the underlying action." *Id.* at 8 (quotation simplified). This application of the rule is premised on the notion that a "judge's denial of summary judgment accurately predicts that reasonable lawyers would find a case arguably meritorious." *Roberts v. Sentry Life Ins.*, 76 Cal. App. 4th 375, 384 (1999).

¶23    Relying on the interim adverse judgment rule, the district court granted Auto-Owners' motion for summary judgment. The court recognized that the court in the Defamation Suit granted Eskamani's second motion for summary judgment, but reasoned that its "decision denying [her] first summary judgment motion was . . . conclusive evidence of probable cause."

¶24    We disagree. First, the interim adverse judgment rule, on which both Auto-Owners and the district court relied, has not been adopted by Utah courts. Second, even if it were the law in Utah, for the reasons set forth below, the rule would not operate to bar the claim here.

¶25    As applied in the context of denial of a defendant's motion for summary judgment, California courts have justified application of the interim adverse judgment rule on the rationale that the denial of a defendant's motion for summary judgment normally provides "persuasive evidence that a suit does not totally lack merit." *Id.* at 383. Purportedly this is the case because a judge denies a defensive summary judgment motion if there

are "genuine issues of material fact" and "the moving party is not entitled to judgment as a matter of law." *Id.* (quotation simplified). "These conclusions necessarily imply that the judge finds at least some merit in the claim" as a whole. *Id.* But this reasoning is too broad because it does not account for the reality that a motion for summary judgment may be denied for a number of reasons, including that

> the trial court may not wish to sift through the voluminous documents filed in support of or against it. Or a court may exercise its discretion to deny an otherwise proper summary judgment motion on the grounds that further development of the case will sharpen the facts and law at issue, lead to a more accurate or just decision, or enhance the court's legal analysis. In some cases, a court might conclude that a trial will actually consume less court time than would be needed to determine the summary judgment motion.

*Health Grades, Inc. v. Boyer*, 2012 COA 196M, ¶ 32, 369 P.3d 613 (quotation simplified), *rev'd on other grounds* 2015 CO 40, 359 P.3d 25; *see also Chalpin v. Snyder*, 207 P.3d 666, 672 (Ariz. Ct. App. 2008) ("We have previously held that denying a motion for summary judgment and allowing a claim to go to the jury is not conclusive evidence that a party initiating a claim had probable cause to bring it for purposes of a malicious prosecution action."); *Bacon v. Reimer & Braunstein, LLP*, 2007 VT 57, ¶¶ 6–7, 929 A.2d 723 (concluding the denial of a defensive summary judgment motion did not establish, as a matter of law, that the plaintiffs had probable cause to bring the action because the ruling contained "little analysis of the facts or law" and therefore did not constitute a "qualitative merits determination"). Moreover, as in this case, a motion for summary judgment need not—and often does not—attack all the elements of a plaintiff's claim, in which event there is no reason to conclude the court, by

denying the motion, has passed any judgment whatsoever on the merits of a claim as a whole.

¶26 For example, a defendant might move for summary judgment on the ground that she owed no duty, that she was immune, or that the claim is barred by the statute of limitations. Such arguments do not require the court to evaluate all the elements a plaintiff must establish to succeed on her claim. Nor do they require that a court rule on issues of breach, causation, or damages. When a summary judgment motion is decided on limited grounds, its denial does not suggest the court found merit in the unaddressed issues, but only that those issues have been deferred to another day. In short, the adverse ruling is not necessarily evidence that the judge was ruling in the non-moving party's favor on any or all of the unchallenged elements.

¶27 Eskamani's first motion for summary judgment in the Defamation Suit was limited in scope; it did not challenge each element Auto-Owners was required to prove to succeed on its claims for defamation, defamation per se, and tortious interference.

¶28 To establish a claim for defamation, a plaintiff must show "(1) the defendant published the statements in print or orally; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages." *Jacob v. Bezzant*, 2009 UT 37, ¶ 21, 212 P.3d 535 (quotation simplified). Although a claim of defamation per se does not require a plaintiff to prove actual damages, a statement gives rise to a claim of defamation per se only when it is false and it "allege[s] criminal conduct on the part of the plaintiff or conduct which is incongruous with the exercise of a lawful business, trade, profession, or office." *Westmont Residential LLC v. Buttars*, 2014 UT App 291, ¶ 22, 340 P.3d 183 (quotation simplified). And to succeed on a claim for intentional interference with economic

relations, "a plaintiff must demonstrate (1) the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff."[6] *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 20, 116 P.3d 323 (quotation simplified).

¶29    In her first motion for summary judgment, Eskamani argued only that Auto-Owners' "causes of action against [her] fail[ed] because . . . the statements alleged in [Auto-Owners' complaint] are not capable of sustaining a defamatory meaning, as they are vague statements of opinion," and "even if the statements were defamatory, the statements are privileged and not actionable." Moreover, she argued that because her "statements are not defamatory and not actionable," the tortious interference claim also failed because "there is no basis to support [Auto-Owners'] allegations that [Eskamani] interfered with their economic relations by an improper means or with an improper purpose."

¶30    In so arguing, Eskamani focused on only some of the elements necessary to establish the claims Auto-Owners asserted in the Defamation Suit. She attacked the elements of defamation and defamation per se that provide a statement is defamatory when it is false and not subject to privilege, *see Jacob*, 2009 UT 37, ¶ 21; *Westmont Residential*, 2014 UT App 291, ¶ 22, and also consequently attacked the improper means element necessary to establish a claim for intentional interference with economic relations, *see Anderson Dev. Co.*, 2005 UT 36, ¶ 20. But these

---

6. We note Eskamani filed her motion in the Defamation Suit prior to our supreme court's decision in *Eldridge v. Johndrow*, 2015 UT 21, 345 P.3d 553, in which the court expressly abandoned the improper-purpose doctrine. *Id.* ¶¶ 14, 42–46 (concluding "improper purpose, in the absence of any improper means, should not be a basis for tortious interference liability").

limited challenges did not require the district court to analyze whether Auto-Owners could establish the other elements of its claims. Specifically, the court did not address damages or the elements of defamation per se, because neither of these had been challenged. In short, the court in the Defamation Suit was able to dispose of the motion for summary judgment without reaching the ultimate merits of Auto-Owners' claims. In such a case, the denial of a defendant's motion for summary judgment is an insufficient basis for conclusively determining the plaintiff had probable cause for filing suit.

¶31    Because Eskamani's first motion for summary judgment in the Defamation Suit did not specifically challenge all the elements of Auto-Owners' claims, we conclude the district court erred in ruling the denial of this motion was sufficient to establish probable cause as a matter of law.[7] Thus, we reverse the district court's grant of summary judgment to Auto-Owners on Eskamani's claim for wrongful use of civil proceedings.

## II. Abuse of Process

¶32    Eskamani next asserts the district court erred when it dismissed her claim alleging Auto-Owners' filing and maintenance of the Defamation Suit constituted an abuse of process. Eskamani maintains the Defamation Suit was motivated by an improper purpose and argues the district court erred in ruling she had failed to point to any independent conduct on the part of Auto-Owners corroborating that allegedly improper purpose.

---

7. Eskamani also argues Auto-Owners is collaterally estopped from arguing it had probable cause to bring the Defamation Suit. Because we are reversing based on the district court's application of the interim adverse judgment rule, we need not reach Eskamani's alternative argument.

¶33   "A plaintiff may state a cause of action for abuse of process against a person who uses a legal process against another primarily to accomplish a purpose for which it is not designed." *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 47, 70 P.3d 17 (quotation simplified). But abuse of process is a "disfavored cause[] of action" and should be narrowly construed because of "the potential to impose an undue chilling effect on the ordinary citizen's willingness to bring a civil dispute to court." *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 59, 116 P.3d 323 (quotation simplified); *see also id.* (collecting cases). "A claim for abuse of process requires the plaintiff to show (1) that the defendant used legal process, (2) to accomplish an improper purpose or purpose for which that process was not designed, (3) causing the plaintiff's harm." *Mountain West Surgical Center, LLC v. Hospital Corp. of Utah*, 2007 UT 92, ¶ 11, 173 P.3d 1276.

¶34   To succeed on an abuse of process claim, the plaintiff "must allege both an ulterior purpose and a willful act in the use of the process not proper in the regular conduct of the proceeding." *Hatch v. Davis*, 2006 UT 44, ¶ 36, 147 P.3d 383 (quotation simplified). "To satisfy the willful act requirement, a party must point to conduct independent of legal process itself that corroborates the alleged improper purpose." *Id.* ¶ 39 (quotation simplified). "Legal process with a bad motive is not enough. A party must allege 'a corroborating act of a nature other than legal process.'" *Segment Consulting Mgmt., LTD. v. Streamline Mfg., LLC*, No. 2:19-CV-933 TS–EJF, 2020 WL 907154, at *3 (D. Utah Feb. 25, 2020) (quoting *Hatch*, 2006 UT 44, ¶ 39).

¶35   In dismissing Eskamani's abuse of process claim, the district court determined she had not presented evidence of a willful act on the part of Auto-Owners corroborating its alleged improper purpose in filing the Defamation Suit. Eskamani contends this determination was erroneous because she presented evidence of "an improperly filed [settlement offer] in

the [Flooding Suit] that conditioned settlement in that case on Ms. Eskamani agreeing to refrain from ever commenting on Auto-Owners." She asserts that filing an unaccepted settlement offer with the court in a case to which she was not a party "is an improper act not part of the normal process of litigation" and argues "[b]oth the procedure and terms of Auto-Owners' [settlement offer] were not part of the ordinary process of a lawsuit."

¶36 The district court correctly observed the "sole 'corroborating act'" advanced by Eskamani was "the inclusion, in a settlement proposal made in the [Flooding Suit], of a demand that Ms. Eskamani take down allegedly defamatory material." But the court concluded the settlement proposal nevertheless was still "part of the legal process in the [Flooding Suit] and is therefore not 'independent of legal process itself.'" (Quoting *Hatch*, 2006 UT 44, ¶ 37.) Relying on the case of *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, 70 P.3d 17, it further reasoned that even if Auto-Owners had filed the Defamation Suit for the ulterior purpose of gaining an advantage in negotiating a settlement in the Flooding Suit, such an ulterior purpose is insufficient to sustain a claim for abuse of process because Eskamani had failed to come forth with any evidence that Auto-Owners had used any process in the Defamation Suit for any purpose other than prosecuting its claims in that action.

¶37 The district court's reasoning is sound. The only willful acts Eskamani identified are (1) presenting a settlement offer that included, among other things, "a condition that [she] refrain from ever commenting about anything relating to Auto-Owners, whether defamatory or not," and (2) filing that unaccepted settlement offer with the district court. In concluding these actions do not satisfy the willful act requirement, we find persuasive the case of *Rusakiewicz v. Lowe*, 556 F.3d 1095 (10th Cir. 2009). In that case, the court grappled with whether the plaintiffs had properly pleaded a claim for abuse of process

arising from the defendant's filing of a prior defamation suit, focusing specifically on whether the plaintiff had satisfied the "willful act requirement." *Id.* at 1103–04 (quotation simplified). To satisfy that requirement, the plaintiffs relied solely on a settlement offer made by the defendant in the defamation suit, which "proposed that [the plaintiffs] agree, in exchange for dismissal, to make no comments or communication of any nature relating in any manner to alleged criminal action or violations of the law by any person concerning the transfer of members." *Id.* at 1104 (quotation simplified). The court concluded the offer was appropriate and thus did not satisfy the willful act requirement because "the attempt to settle the [defamation] case was a part of, not an act outside of, the regular conduct of legal process." *Id.* (quotation simplified). It reasoned the aim of the settlement offer was to "end . . . the defendant's alleged defamatory statements," which "is not a step beyond the purview of legal action for defamation." *Id.* (quotation simplified). Moreover, because any "difference between the goal sought by the proffered settlement and the goal sought by the lawsuit" was negligible, "[i]t would be strange, and contrary to common legal practice, to regard such a settlement as an improper use of the legal process." *Id.*

¶38   Here, the settlement offer from Auto-Owners provided that "upon settlement" Eskamani "or anyone on her behalf shall stop all contact of whatever nature with [Auto-Owners], and/or any other person or entity in regards to this lawsuit or any other subject matter, and shall refrain from oral or written publishing of any kind in relationship to [Auto-Owners]." As was the case in *Rusakiewicz*, the settlement offer had a dual purpose: (1) to settle the underlying Flooding Suit and (2) to prevent Eskamani from making publicly disparaging statements about the company. Such "[n]on-disparagement clauses are common contractual provisions." *Patterson v. Knight*, 2017 UT App 22, ¶ 9, 391 P.3d 1075. Because the purpose of a settlement offer is to end

the case on the terms of the offering party, a settlement offer containing a non-disparagement clause does not rise to the level of a willful act independent of the legal process giving rise to an abuse of process claim. *See Rusakiewcz*, 556 F.3d at 1104 ("[F]iling a lawsuit and performing ordinary acts in the regular course of the legal proceedings is not abuse of process even if the goals of the lawsuit are nefarious and improper."). Moreover, even assuming Auto-Owners later initiated the Defamation Suit with the ulterior motive of leveraging a settlement in the Flooding Suit, such an ulterior motive is insufficient to give rise to an abuse of process claim under the circumstances presented here because "there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Bennett*, 2003 UT 9, ¶ 49 (quotation simplified).

¶39    We are similarly unpersuaded by Eskamani's assertion that Auto-Owners' filing of the unaccepted settlement offer with the district court constitutes an abuse of process not proper in the regular conduct of the proceeding that corroborates its alleged improper purpose in filing the Defamation Suit. Indeed, filing the offer was not improper. The settlement offer was made pursuant to rule 68 of the Utah Rules of Civil Procedure. Relying on the portion of the rule that specifies the mechanism for obtaining a judgment based on an accepted offer of judgment, Eskamani contends that only accepted offers of judgment may be filed with the court. But rule 68 is not so prohibitive. It provides:

> (c) An offer made under this rule shall:
>> (1) be in writing;
>> (2) expressly refer to this rule;
>> (3) be made more than 10 days before trial;
>> (4) remain open for at least 10 days; and
>> (5) be served on the offeree under Rule 5.

> Acceptance of the offer shall be in writing and served on the offeror under Rule 5. Upon acceptance, either party may file the offer and acceptance with a proposed judgment under Rule 58A.

Utah R. Civ. P. 68(c) (2011).[8] Subsection (c)(5) of the rule requires that rule 68 settlement offers be served in accordance with rule 5. We accordingly turn to rule 5 to assess the propriety of the filing of the settlement offer.

¶40 Auto-Owners' filing of the unaccepted settlement offer was permitted under rule 5. Rule 5(b), which describes how service is made, expressly states that "a party shall serve a paper under this rule . . . upon any person with an electronic filing account who is a party or attorney in the case by submitting the paper for electronic filing." *Id.* R. 5(b)(1)(A)(i). Because the rule provides that one of the mechanisms for serving a paper is to file it with the court, Eskamani's argument that the filing was not authorized is inconsistent with the language of the rule.

¶41 And at the relevant time, rule 5(d) required that the offer be filed with the court. It stated, "[a]ll papers after the complaint required to be served upon a party shall be filed with the court either before or within a reasonable time after service." *Id.* R. 5(d). Thus, because an offer under rule 68 is a paper that must be served under rule 5, *see id.* R. 68(c)(5), and because compliance with rule 5 required that the paper be filed with the court "*either before* or within a reasonable time after service," *id.* R. 5(d) (emphasis added), it was appropriate (and required) for Auto-Owners to file the offer with the court.

---

8. The settlement offer was filed on September 28, 2011. We therefore apply the version of the Utah Rules of Civil Procedure in effect at that time.

¶42    In short, we agree with the district court's conclusion that Eskamani's abuse of process claim was subject to dismissal because she failed to present any evidence of a willful act on the part of Auto-Owners corroborating its alleged improper purpose in filing the Defamation Suit. We discern nothing improper about the terms of the settlement offer in the Flooding Suit made by Auto-Owners. And we similarly find nothing improper about the fact that the unaccepted offer was filed with the court. Accordingly, we affirm the district court's grant of summary judgment to Auto-Owners on Eskamani's abuse of process claim.

### III. Motion for Sanctions

¶43    Eskamani challenges the district court's denial of her "Motion to Strike Auto-Owners' Reliance-on-the-Advice-of-Counsel Defense and for other Rule 37 Sanctions." Eskamani's motion asked the court to impose three sanctions against Auto-Owners under "Utah Rules of Civil Procedure 26, 33 and 37" based on its failure to timely produce documents supporting its advice-of-counsel defense and its cancellation of the deposition of Auto-Owners' Utah attorney. First, Eskamani sought to preclude Auto-Owners from introducing into evidence the 715 pages of documents produced by Auto-Owners on the final day of fact discovery. Second, she sought to bar Auto-Owners' Utah attorney from testifying. And third, she sought an order striking Auto-Owners' advice-of-counsel defense.

¶44    The district court ruled all three requests were "properly addressed in the context of rule 37, which provides 'the court, upon motion, may impose appropriate sanctions for the *failure to follow its orders.*'" (Quoting Utah R. Civ. P. 37(b).) Because Eskamani had not obtained a predicate order, the court denied her motion for sanctions, reasoning that "[a]bsent the existence of [an] order and a failure to comply therewith, rule 37 does not authorize imposition of sanctions."

¶45    On appeal, Eskamani argues the district court erred in analyzing her motion under rule 37. She argues her request for sanctions should have been analyzed under rule 26(d)(4) of the Utah Rules of Civil Procedure, which did not require her to obtain a predicate discovery order from the court. Auto-Owners contests this framing of the issue, asserting the court properly declined to grant the requested relief under rule 37. We conclude Eskamani's request to exclude the untimely disclosed documents is governed by rule 26, while her requests to strike the advice-of-counsel defense and the testimony of Auto-Owners' Utah attorney are governed by rule 37.

¶46    Rule 26 governs discovery generally. It provides, among other things, that a party may obtain discovery through requests for production of documents. Utah R. Civ. P. 26(c)(1). Responses for such requests must be "based on the information then known or reasonably available to the party," *id.* R. 26(d)(1), and must be supplemented in a timely manner, *id.* R. 26(d)(5). Importantly, "[i]f a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless, or the party shows good cause for the failure." *Id.* R. 26(d)(4).

¶47    The plain language of rule 26(d)(4) clearly directs that the sanction for failure to properly respond to a discovery request under rule 26 is automatic—it does not require a predicate discovery order. The comments to the rule reinforce the automatic nature of the exclusion sanction:

> If a party fails to disclose or to supplement timely its discovery responses, that party cannot use the undisclosed witness, document, or material at any hearing or trial, absent proof that non-disclosure was harmless or justified by good cause. More complete disclosures increase the likelihood that

> the case will be resolved justly, speedily, and inexpensively. Not being able to use evidence that a party fails properly to disclose provides a powerful incentive to make complete disclosures. This is true only if trial courts hold parties to this standard. Accordingly, although a trial court retains discretion to determine how properly to address this issue in a given case, the usual and expected result should be exclusion of the evidence.

*Id.* R. 26 advisory committee notes.

¶48 As Eskamani correctly observes, both our supreme court and this court have recognized the sanction for violating the discovery response provisions of rule 26 is an automatic and mandatory exclusion of the documents or testimony not properly included in the response. *Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 35, 215 P.3d 933 (citing former Utah R. Civ. P. 37(f)); *Dahl v. Harrison*, 2011 UT App 389, ¶ 22, 265 P.3d 139 (citing former Utah R. Civ. P. 37(f)), *abrogated on other grounds by R.O.A. Gen., Inc. v. Chung J. Dai*, 2014 UT App 124, 327 P.3d 1233. And no predicate discovery order is required before the exclusionary sanction may be imposed. *See Keystone Ins. Agency, LLC v. Inside Ins., LLC*, 2019 UT 20, ¶ 18, 445 P.3d 434 (upholding exclusion under rule 26(d)(4) without requiring violation of a prior court order); *Segota v. Young 180 Co.*, 2020 UT App 105, ¶¶ 16–23, 470 P.3d 479 (same); *see also Arreguin-Leon v. Hadco Constr. LLC*, 2018 UT App 225, ¶¶ 22, 24–25, 438 P.3d 25 (concluding admission of expert's testimony was improper where the plaintiff failed to supplement his initial discovery response), *aff'd* 2020 UT 59.

¶49 Unlike rule 26, rule 37 conditions the availability of discovery sanctions upon the failure of a party to follow a discovery order. Rule 37 outlines the procedure for resolving

discovery disputes. Parties seeking to obtain a discovery order must file a short statement of discovery issues outlining, among other things, the relief sought and certifying that the party has in good faith conferred or attempted to confer with the other affected parties. Utah R. Civ. P. 37(a). While the statement of discovery issues may include a request for costs, expenses, and attorney fees, it may not include a request for sanctions. *Id.* R. 37(a)(8). In response, the court may enter orders regarding disclosure or discovery. *Id.* R. 37(a)(7). And upon motion, "[u]nless the court finds that the failure was substantially justified," it "may impose appropriate sanctions for the failure to follow its orders," including sanctions that "prohibit the disobedient party from supporting or opposing designated claims or defenses." *Id.* R. 37(b).

¶50 The district court appropriately analyzed under rule 37 Eskamani's claim to exclude the testimony of Auto-Owners' Utah attorney. Eskamani's claim to exclude the attorney's testimony was not based on Auto-Owners' failure to disclose under rule 26, but on its cancellation of the attorney's deposition.[9] And Eskamani not only failed to obtain an order from the court compelling the deposition, she failed to respond to Auto-Owners' discovery statement requesting the deposition be continued. The court therefore correctly reasoned that Eskamani was not entitled to an order excluding the attorney's testimony in light of its order continuing the deposition[10] "until

---

9. Indeed, Eskamani identified Auto-Owners' Utah attorney as a potential witness in her own rule 26 disclosures.

10. As Auto-Owners acknowledged in its opposition to Eskamani's motion to strike, the district court's order merely continued the attorney's deposition "until after the Court rules on [Auto-Owners'] Motion for Summary Judgment regarding

(continued…)

after the Court rules on [Auto-Owners'] Motion for Summary Judgment regarding [Eskamani's] standing in this case."

¶51 The district court also appropriately analyzed Eskamani's request to strike Auto-Owners' advice-of-counsel defense under rule 37, rather than under rule 26. Although rule 26 provides for the exclusion of documents and witnesses that are not timely disclosed, it does not authorize the exclusion of entire claims or defenses. *See id.* R. 26(d)(4). Such requests for sanctions are governed by rule 37. *See id.* R. 37(b)(4). We therefore hold the district court correctly analyzed Eskamani's request to strike Auto-Owners' advice-of-counsel defense under rule 37 and correctly concluded that it was not authorized to exclude the defense absent the existence of a court order with which Auto-Owners had failed to comply.

¶52 Although we discern no error in the district court's rule 37 analysis as it relates to the attorney's testimony and the advice-of-counsel defense, we hold the court erred in applying rule 37 to analyze Eskamani's request to exclude the 715 pages of documents that Auto-Owners disclosed on the final day of fact discovery. That request was governed by rule 26(d),[11] which does not require a party to obtain a court order before seeking the specified remedy of automatic exclusion. *Id.* R. 26(d)(4).

---

(…continued)
[Eskamani's] standing in this case." Thus, Eskamani "still has the opportunity to depose [the attorney]" on remand.

11. Eskamani cited rule 26 in her motion, quoting the language from subsection (d)(4), which provides that a party who fails to disclose or supplement her disclosures in a timely manner "may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." Utah R. Civ. P. 26(d)(4).

¶53 On remand, the district court should analyze Eskamani's request to exclude the 715 pages of documents under rule 26. In conducting its analysis, the court should first determine whether any of the 715 pages disclosed on the eve of the discovery cut-off had previously been disclosed. Any documents not timely disclosed must then be excluded unless Auto-Owners establishes its failure to disclose was harmless or shows good cause for its failure. *See id.* R. 26(d)(4).

## CONCLUSION

¶54 The district court erred in dismissing Eskamani's wrongful use of civil proceedings claim. We therefore reverse the court's dismissal of that claim and remand for further proceedings consistent with this opinion. But the court did not err in dismissing Eskamani's abuse of process claim, because Eskamani did not satisfy the willful act requirement by identifying conduct corroborating Auto-Owners' alleged improper purpose for filing the Defamation Suit. Finally, we affirm the court's denial of Eskamani's motion to strike Auto-Owners' advice-of-counsel defense and to exclude the testimony of its attorney. But we reverse the court's denial of Eskamani's motion to exclude the 715 pages of documents produced on the final day of fact discovery and remand that issue to the district court for consideration under rule 26(d)(4) of the Utah Rules of Civil Procedure.

¶55 Affirmed in part and reversed in part.

---