FILED
United States Court of Appeals
Tenth Circuit

December 4, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JONATHAN BEXTEL,

    Plaintiff - Appellant,

v.

M. CANDICE BRYNER; LAW OFFICES
OF M. CANDICE BRYNER, a California
professional corporation; CHARLES
RICHARDS,

    Defendants - Appellees.

No. 19-8080
(D.C. No. 2:19-CV-00204-ABJ)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **MURPHY** and **PHILLIPS**, Circuit Judges.
_____

Wyoming law requires a plaintiff suing for malicious prosecution to show that

the underlying (and allegedly malicious) lawsuit terminated in his or her favor. The

lawsuit underlying this malicious-prosecution case occurred in California, when

Charles Richards sued Jonathan Bextel. The California court found that it lacked

personal jurisdiction over Bextel, and Richards dismissed him from the lawsuit

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

without prejudice. Citing the California lawsuit, Bextel sued Richards[1] in Wyoming for malicious prosecution. The district court dismissed the case, concluding that Bextel could not make out a malicious-prosecution claim because the California lawsuit did not terminate in his favor. We agree with the district court, so we affirm.

## I. Background[2]

Bextel worked for, and eventually acquired, a Wyoming company that organizes limited liability companies, maintains an inventory of those companies, and provides them to "customers who want to have a Wyoming LLC." Aplt. App. at 18. In line with this practice, Bextel organized Mountain Meadow Partners, LLC. A man named Darrell Shortes eventually bought "the right to the name 'Mountain Meadow Partners, LLC,' and the official filings with the Wyoming Secretary of State for that entity," *id.* at 20, and Bextel's company resigned as the agent for Mountain Meadow Partners.

More than two years later, Bextel learned about a judgment against him from California. It turned out that, in a California court, Richards had sued Bextel, Shortes, Mountain Meadow Partners, and several others for fraud (among other things) based on a failed business deal between Richards and a person claiming to be

---

[1] The other defendants in this lawsuit are Richards's lawyer and his lawyer's firm. For convenience, we will refer to the defendants collectively as Richards.

[2] We recite the background facts as they appear in Bextel's complaint. We take judicial notice of documents from the California lawsuit because they are publicly filed records from another court "concerning matters that bear directly upon the disposition of the case at hand," *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007), and we consider those documents along with the allegations in the complaint, *see Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

Shortes, operating through Mountain Meadow Partners. Richards's fraud claim alleged that the person claiming to be Shortes was in fact Bextel or someone else. Richards also alleged that Bextel is a principal of Mountain Meadow Partners. The California court eventually entered a default judgment against Bextel, and Richards went to a Wyoming court and obtained a writ of execution on the default judgment.

Once Bextel found out about the default judgment from California, he successfully moved to vacate it. The California court agreed that it lacked personal jurisdiction over him. Evaluating personal jurisdiction, the California court opined that Richards "offered mostly speculation" to support his claim that Bextel misrepresented himself as Shortes and that Richards offered no support for his claim that Bextel could not have been only an organizer and registered agent for Mountain Meadow Partners. *Id.* at 88. After the California court's jurisdictional ruling, Bextel demanded that Richards dismiss him from the California lawsuit with prejudice. Richards refused, ultimately dismissing Bextel without prejudice.

Bextel then sued Richards for malicious prosecution in a Wyoming state court. Richards invoked diversity jurisdiction and removed the case to federal court. Then he moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Bextel failed to state a claim because he did not allege facts showing, as he must, that the California lawsuit terminated in his favor. The district court agreed and dismissed the case.

3

## II. Discussion

We review a Rule 12(b)(6) dismissal de novo. *Smallen v. W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020). To survive a motion to dismiss, "a complaint must plead facts sufficient 'to state a claim to relief that is plausible on its face.'" *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In diversity cases, federal courts apply state law with the goal "of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007). We apply the choice-of-law rules of the forum state, in this case, Wyoming. *See Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). The parties agree that Wyoming law governs Bextel's malicious-prosecution claim.

To ascertain and apply state law, we start with the most recent decisions from the state's highest court. *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011). If no controlling state opinion exists, we must try to predict what the state's highest court would do. *Id.* Such a prediction "should consider state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988).

At least for now, this case turns on one element of a malicious-prosecution claim under Wyoming law: the allegedly malicious prosecution must have terminated in favor of the party now suing, *see Consumers Filling Station Co. v. Durante*, 333 P.2d 691, 694 (Wyo. 1958). The allegedly malicious prosecution in this case—

4

the California lawsuit—ended with a voluntary dismissal without prejudice after the court ruled that it lacked jurisdiction over Bextel. Would the Supreme Court of Wyoming view that disposition as a termination in Bextel's favor? Bextel thinks so, highlighting an opinion from more than a century ago, *McIntosh v. Wales*, 134 P. 274 (Wyo. 1913).

The defendants in *McIntosh* accused the plaintiff of stealing unbranded calves. *Id.* at 275. But "after inquiry and investigation," the prosecutor "refused to prosecute," and the charge "was without the consent of the" defendants dismissed. *Id.* The plaintiff then successfully sued the defendants for malicious prosecution. *Id.* The defendants argued on appeal "that the dismissal of the criminal proceeding by the justice of the peace at the request of the prosecuting attorney without submitting any evidence was not a termination of that proceeding in [the] plaintiff's favor." *Id.* at 276. The Supreme Court of Wyoming disagreed, noting that the dismissal "put an end to any further proceedings" on the criminal complaint and that the proceedings "could not be revived," while recognizing that the "dismissal would be no bar to a prosecution for the same offense charged in a new and different complaint." *Id.* at 277.

We agree with Bextel that *McIntosh* shows that a voluntary dismissal without prejudice *can* amount to favorable termination for purposes of malicious prosecution. Given that the prosecutor refused to go forward and that the dismissal would not bar a future prosecution for the same offense, it is fair to say that the underlying criminal case in *McIntosh* ended with a voluntary dismissal without prejudice.

5

Richards would distinguish *McIntosh* in two ways. First, he highlights that the underlying case in *McIntosh* was criminal whereas here it was civil. We do not see why that difference should matter, however, because "the same elements must be present to authorize the maintenance of an action for maliciously instituting a civil suit as for maliciously prosecuting a criminal proceeding," *Consumers Filling Station*, 333 P.2d at 694. Second, Richards tells us that the prosecutor dismissed the underlying case in *McIntosh* because he "lacked credible evidence." Aplee. Br. at 14. True, the prosecutor in *McIntosh* refused to go forward "after inquiry and investigation." 134 P. at 275. But although it might be reasonable to infer that the investigation revealed holes in the evidence (or even affirmatively showed the plaintiff's innocence), the *McIntosh* opinion does not make clear the results of the investigation or the reason for the prosecutor's decision to drop the charge. So *McIntosh* does not expressly limit itself to cases in which the initial prosecution ends in a dismissal based on a lack of credible evidence.

But neither does *McIntosh* expressly say that a voluntary dismissal without prejudice *necessarily* amounts to a favorable termination supporting a later malicious-prosecution claim. After all, voluntary dismissals without prejudice can occur for many reasons, ranging from a lack of evidence to a decision to refile in a different forum. The underlying criminal case in *McIntosh* is but one example of a case that can fairly be described as ending with a voluntary dismissal without prejudice. Whatever we might say about *McIntosh*, it does not delineate what types of voluntary dismissals amount to a favorable termination. And so it leaves us

6

uncertain about the circumstances under which the Supreme Court of Wyoming would conclude that a voluntary dismissal without prejudice qualifies as a favorable termination. The parties have not identified other Wyoming authority resolving that question, and we have not found any. So we look elsewhere.

The Restatement provides guidance because the Supreme Court of Wyoming has relied on it "on numerous occasions to develop [its] common law." *Howard v. Aspen Way Enters., Inc.*, 406 P.3d 1271, 1278 (Wyo. 2017). The Restatement tells us that civil proceedings can terminate in favor of the person against whom they are brought by "the withdrawal of the proceedings by the person bringing them." Restatement (Second) of Torts § 674 cmt. j (1977). But whether such a withdrawal constitutes a termination in favor of the person against whom the proceedings are brought "depends upon the circumstances under which the proceedings are withdrawn." *Id.* "In determining the effect of withdrawal the same considerations are decisive as when criminal charges are withdrawn . . . ." *Id.* And when a criminal case is dismissed, "abandonment of the proceedings because the accuser believes that the accused is innocent or that a conviction has, in the natural course of events, become impossible or improbable, is a sufficient termination in favor the accused." *Id.* at § 660 cmt. d.

Several jurisdictions have adopted the Restatement's approach, looking to the circumstances surrounding the prior disposition; still others, without expressly embracing the Restatement, have employed a similar approach. *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1352–53 (Ill. 1997)

7

(collecting cases); *see also, e.g.*, *Lackner v. LaCroix*, 602 P.2d 393, 394 (Cal. 1979) (stating that the "termination must *reflect* on the merits of the underlying action"); *Nielsen v. Spencer*, 196 P.3d 616, 623 (Utah Ct. App. 2008) (recognizing its prior holding "that the termination of the prior proceeding must reflect on the merits, or lack thereof"). We think the Supreme Court of Wyoming would align with the Restatement and the jurisdictions that treat a voluntary dismissal without prejudice as a favorable termination if the circumstances of the dismissal reflect on the merits.

And we predict that the Supreme Court of Wyoming would conclude that the circumstances around Bextel's dismissal from the California lawsuit do not reflect on the merits. The dismissal followed the California court's jurisdictional ruling. The weight of authority holds that a dismissal for lack of jurisdiction does not reflect on the merits. *See Bearden v. BellSouth Telecomm., Inc.*, 29 So. 3d 761, 766 (Miss. 2010) (collecting cases and concluding "that the dismissal of the case for lack of jurisdiction does not reflect on the merits of the criminal case against" the plaintiff); *Lackner*, 602 P.2d at 395 (noting that a dismissal for lack of jurisdiction "not only is not on the merits, it is unreflective of the merits; neither the judgment of the court nor that of the prosecuting party on the merits is implicated in the dismissal"); *Hatch v. Davis*, 102 P.3d 774, 780 (Utah Ct. App. 2004) (holding that the underlying action did not terminate in party's favor because the "claim was dismissed for lack of jurisdiction and not on the merits"), *aff'd*, 147 P.3d 383 (Utah 2006); *but see Turman v. Schneider Bailey, Inc.*, 768 S.W.2d 108, 113 (Mo. Ct. App. 1988) (concluding that a dismissal "for lack of jurisdiction without prejudice" was a favorable termination).

8

Bextel argues that even though the California court's ruling, at bottom, addressed jurisdiction, its analysis nevertheless reflected on the merits. The court's analysis, he points out, rejected Richards's allegations that Bextel misrepresented himself as Shortes and that he was a principal of Mountain Meadow Partners. In rejecting these allegations, Bextel contends, the California court in effect opined "that Bextel was not liable on the claims asserted against him." Aplt. Reply Br. at 10. We disagree. There is no getting around the fact that the jurisdictional ruling evaluated only that—jurisdiction. And because the jurisdictional ruling did not wade into the merits, any conclusions that we might draw from it about the merits would rest on speculation. In short, a "voluntary dismissal on technical grounds, such as lack of jurisdiction, . . . does not constitute a favorable termination because it does not reflect on the substantive merits of the underlying claim." *Robbins v. Blecher*, 60 Cal. Rptr. 2d 815, 819 (Cal. Ct. App. 1997).

Nor has Bextel persuaded us that whether the California lawsuit terminated in his favor should be decided by a jury, not by a court under Rule 12(b)(6). Bextel relies on the Restatement's assessment that a jury should decide "the circumstances under which the proceedings were terminated." Restatement (Second) of Torts §§ 673(2)(c), 681B(2)(c). But he ignores its assessment that the court should decide whether the proceedings were "terminated in favor of the plaintiff." *Id.* at §§ 673(1)(b), 681B(1)(b). In malicious-prosecution cases, "the jury has only the function of finding the circumstances under which the defendant acted. The court determines whether, under those circumstances, the termination was sufficiently

9

favorable to the accused." *Id.* at § 673 cmt. e; *see also* § 681B cmt. a (stating that comments to § 673 also apply to § 681B). Everyone agrees about the circumstances under which Richards acted when he dismissed Bextel from the California lawsuit: he acted in response to the jurisdictional ruling. The district court correctly concluded that those circumstances were not favorable enough to support a malicious-prosecution claim under Wyoming law.

### III. Conclusion

The judgment is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge

10