2008 UT App 362

Paul PUTTUCK, an individual; and Paul Puttuck dba Breakthrough Construction, Plaintiffs and Appellants,

v.

Peter GENDRON; William Gendron; and Does 1 through 5, inclusive, Defendants and Appellees.

No. 20070731–CA.

Court of Appeals of Utah.

Oct. 17, 2008.

John F. Fay, Sandy, for Appellants.

Harold G. Christensen and Heather S. White, Salt Lake City, for Appellees.

Before THORNE, Associated P.J., BENCH, and McHUGH, JJ.

## OPINION

BENCH, Judge:

¶1 Plaintiffs Paul Puttuck and Paul Puttuck dba Breakthrough Construction appeal from the trial court's dismissal of their claims against Defendants Peter and William Gendron for wrongful use of civil proceedings, abuse of process, civil perjury, obstruction of justice, and civil conspiracy. Although the trial court improperly considered evidence from another trial in its ruling, Plaintiffs' complaint fails to state any claim for which relief could be granted and was properly dismissed. Also, the trial court did not abuse its discretion by refusing to grant Plaintiffs leave to amend their complaint because they did not file a proper request. We therefore affirm.

## BACKGROUND

¶2 At some point prior to 1999, Plaintiffs entered into a contract to construct a home in Deer Valley for the Gendrons. In February 1999, Plaintiffs sued the Gendrons and others for breach of contract and related claims. In response, the Gendrons asserted a $500,000 counterclaim against Plaintiffs. In his February 2000 deposition in that case, Peter Gendron testified that from March 1998 through February 2000, Plaintiffs' substandard work and negligence had cost the Gendrons $500,000 in mismanagement overruns, construction delays, and repairs. William Gendron was present at that deposition. Eventually, that lawsuit settled.

¶3 The Gendrons subsequently hired another construction company, Charis Construction, to work on the home. In 2002, Charis Construction and its principal, John Hale, brought suit against the Gendrons and others alleging, among other claims, breach of contract (the Charis Construction litigation). The Gendrons responded by asserting a counterclaim against Charis Construction and Hale. In November 2003, the Gendrons were deposed as part of this lawsuit. Peter Gendron testified that the Gendrons had incurred damages of $500,000 because of Charis Construction's substandard and negligent work. These damages were allegedly incurred during a time period running from

January 1999 to August 2000—a period that overlapped the period associated with the Gendrons' counterclaim against Plaintiffs in the first suit. Peter Gendron gave the same testimony at trial. William Gendron was aware of Peter Gendron's deposition and trial testimony. A jury eventually awarded both Charis Construction and the Gendrons damages for the claims and counterclaim.

¶ 4 Following the jury trial in the Charis Construction litigation, Plaintiffs brought this suit against the Gendrons, asserting five claims: (1) wrongful use of civil proceedings, (2) abuse of process, (3) civil perjury, (4) obstruction of justice, and (5) civil conspiracy. The gist of these claims is that the Gendrons' counterclaim against Plaintiffs in the first lawsuit was knowingly false and that Peter Gendron gave false testimony in his deposition during that first lawsuit. Plaintiffs allege that Peter Gendron lied when he stated that the $500,000 in mismanagement costs forming the basis of the counterclaim were attributable to Plaintiffs rather than Hale and Charis Construction. Plaintiffs aver that William Gendron knew that Peter Gendron's testimony was false but did not discredit or disavow it, despite having opportunities to do so. Plaintiffs also claim that the Gendrons made the false counterclaim and submitted false testimony for the purpose of intimidating them, injuring their business reputation, and preventing proper prosecution of their claims. Plaintiffs allegedly suffered damages in the form of attorney fees expended to defend against the false counterclaim.

¶ 5 Rather than answering Plaintiffs' complaint, the Gendrons filed a motion to dismiss pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure. In that motion, the Gendrons argued that Plaintiffs' claims for perjury and obstruction of justice failed because Utah does not recognize a private right of action for such claims and that Plaintiffs failed to state a claim for wrongful use of civil proceedings, abuse of process, or conspiracy. Additionally, the Gendrons argued that Plaintiffs' claims were barred by the four-year statute of limitations contained in Utah Code section 78–12–25(3) because these causes of action accrued on the date of Peter Gendron's first deposition, which was more than four years before Plaintiffs brought suit in March 2007.

¶ 6 In response to the Gendrons' motion, Plaintiffs filed a memorandum in opposition. At the end of this opposing memorandum, Plaintiffs stated, "PLAINTIFFS REQUEST TO AMEND COMPLAINT if the Court finds the need for more information regarding the claims asserted." Plaintiffs did not file a formal motion for leave to amend, nor did they submit a proposed amended complaint or otherwise indicate to the trial court what changes in their pleadings they would make.

¶ 7 In its ruling on the Gendrons' motion to dismiss, the trial court stated that Plaintiffs' claims had no merit and failed "on many levels." The trial court held that Plaintiffs' claim for wrongful use of civil proceedings failed because the first litigation between the Gendrons and Plaintiffs resulted in a settlement, which did not constitute a "favorable termination" as is required to state a claim for that tort. The trial court dismissed Plaintiffs' claim for abuse of process because it was merely an attempt to relitigate the underlying building dispute and was therefore barred by collateral estoppel, and because the counterclaim against Charis Construction was not for the same costs and mismanagement associated with the counterclaim against Plaintiffs. The trial court dismissed Plaintiffs' civil perjury claim because Utah law does not recognize that cause of action. The court dismissed the claim for obstruction of justice because another jury had determined that the Gendrons' counterclaim against Hale and Charis Construction had merit and because the facts alleged did not demonstrate a possible cause of action. Additionally, the trial court held that the civil conspiracy claim failed because Plaintiffs had not alleged any meeting of the minds between the Gendrons and because knowledge of the falsity of another's testimony and failure to correct the testimony does not create a conspiracy. As a final part of its ruling, the court held that all of Plaintiffs' claims were barred by the statute of limitations.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 "Because the propriety of a 12(b)(6) dismissal is a question of law, we give the

trial court's ruling no deference and review it under a correctness standard." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991). "When determining whether the court properly granted a motion to dismiss, we accept the factual allegations in the complaint to be true and consider them and all reasonable inferences drawn therefrom in a light most favorable to the plaintiff." *Hunsaker v. State*, 870 P.2d 893, 897–98 (Utah 1993). On the other hand, " '[t]he standard of review of a denial to amend pleadings is abuse of discretion.' " *Sulzen v. Williams*, 1999 UT App 76, ¶ 12, 977 P.2d 497 (quoting *Kasco Servs. Corp. v. Benson*, 831 P.2d 86, 92 (Utah 1992)).

## ANALYSIS

### I. 12(b)(6) Dismissal

#### A. Wrongful Use of Civil Proceedings

¶ 9 Plaintiffs contend that the trial court erred in dismissing their claim for wrongful use of civil proceedings because their first litigation with the Gendrons ended in a settlement purportedly in Plaintiffs' favor. In order to state a claim for wrongful use of civil proceedings, it must be alleged that a party

"t[ook] an active part in the initiation, continuation, or procurement of civil proceedings against another ... [and] (a) he [or she] act[ed] without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings [we]re based, and (b) ... the proceedings have terminated in favor of the person against whom they [we]re brought."

*Gilbert v. Ince*, 1999 UT 65, ¶ 19, 981 P.2d 841 (third alteration in original) (quoting Restatement (Second) of Torts § 674 (1977)).[1] More specifically, a party bringing a claim for wrongful use of civil proceedings must show that "the underlying action resolved *on the merits* in his or her favor." *Hatch v. Davis*, 2004 UT App 378, ¶ 29, 102 P.3d 774 (emphasis added), *aff'd in part and remanded in part*, 2006 UT 44, 147 P.3d 383. Resolution on the merits in one party's favor can

occur "by (1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of his failure to prosecute them." Restatement (Second) Torts § 674 cmt. j (1977). "Whether a withdrawal or abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought ... depends upon the circumstances under which the proceedings are withdrawn." *Id.* If a proceeding is withdrawn pursuant to an agreement of compromise, it does not qualify as a favorable termination for purposes of the tort of wrongful use of civil proceedings. *See id.* ("In determining the effect of withdrawal [of a civil proceeding] the same considerations are decisive as when criminal charges are withdrawn...."); Restatement (Second) of Torts § 660 (1977) ("A termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if ... the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused...."). Thus, a settlement would not qualify as a favorable termination of an underlying action because it is not a termination on the merits. *See Hatch*, 2004 UT App 378, ¶ 23, 102 P.3d 774 (stating that "the 'termination must *reflect* on the merits of the underlying action' " (quoting *Lackner v. LaCroix*, 25 Cal.3d 747, 159 Cal.Rptr. 693, 602 P.2d 393, 394 (1979))).

¶ 10 The settlement between Plaintiffs and the Gendrons in their first litigation does not qualify as a favorable termination for purposes of Plaintiffs' claim in this suit because the settlement does not reflect on the merits of the parties' underlying claims and counterclaim. The trial court therefore did not err in ruling that the settlement did not qualify as a favorable termination and that Plaintiffs failed to state a claim for wrongful use of civil proceedings.

#### B. Abuse of Process

¶ 11 Plaintiffs contend that the trial court erred in dismissing their abuse of pro-

---

1. We note, however, that when proceedings are ex parte, a party need not show that the proceedings terminated in its favor. *See* Restatement (Second) of Torts § 674(b) (1977).

cess claim by failing to accept as true the facts alleged in their complaint and by considering factual determinations from the Charis Construction litigation. "A rule 12(b)(6) dismissal is merely a recognition by a trial court that a plaintiff's claim for relief is formally deficient." *Cazares v. Cosby*, 2003 UT 3, ¶ 14, 65 P.3d 1184. The trial court is limited therefore to considering the facts alleged in the pleading itself rather than factual determinations from prior proceedings. *See id.* ¶ 15 (holding that it was inappropriate for the trial court to "appl[y] its own findings of fact from the [prior] evidentiary hearing to resolve any doubts about the evidence" and thereby "conclude[ ] that [the plaintiff] could not prevail").[2] "If, on a motion [to dismiss] . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . and all parties shall be given reasonable opportunity to present all material pertinent to such a motion. . . ." Utah R. Civ. P. 12(b).

¶ 12 In this case, matters outside Plaintiffs' complaint, such as pleadings from the previous litigation against the Gendrons and from the Charis Construction litigation, were presented to the court. Although the court took into consideration these pleadings, as well as its own recollection of the Charis Construction litigation, there is no indication in the record that the court formally converted the motion to dismiss into a motion for summary judgment and gave the parties an opportunity to present additional evidence. The court therefore could not properly dismiss Plaintiffs' abuse of process claim by considering outside evidence and determining that the prior counterclaims were not as Plaintiffs alleged in their complaint.

¶ 13 We nonetheless affirm the trial court's dismissal of Plaintiffs' abuse of process claim because the claim was formally deficient, failing to state a claim for which relief could be granted. *See Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 ("[A]n appellate court may affirm the judgment appealed from 'if it is sustainable on any legal ground or theory apparent on the record.'" (quoting *Dipoma v. McPhie*, 2001 UT 61, ¶ 18, 29 P.3d 1225)). Under the theory of an abuse of process, "the defendant . . . cannot be held responsible for maliciously causing the [initiation of process against] the plaintiff, but only for some improper use made of the [process] . . . after it was issued." *Kool v. Lee*, 43 Utah 394, 134 P. 906, 910 (1913). Unlike an action for wrongful use of civil proceedings, "[i]n an action for abuse of process, it is not necessary to show either malice or want of probable cause, nor that the proceeding had terminated, and it is immaterial whether such proceeding was baseless or not." *Hatch*, 2004 UT App 378, ¶ 33, 102 P.3d 774 (internal quotation marks omitted). Rather, "to establish a claim for abuse of process, a claimant must demonstrate first, an ulterior purpose; [and] second, an act in the use of process not proper in the regular prosecution of the proceedings." *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 65, 116 P.3d 323 (alteration in original) (internal quotation marks omitted); *see also* Restatement (Second) of Torts § 682 cmt. a (1977) ("The gravamen of [an abuse of process claim] . . . is not the wrongful procurement of legal process or the wrongful initiation of . . . civil proceedings; it is the misuse of process, no matter how properly attained, for any purpose other than that which it was designed to accomplish."); W. Keeton, *Prosser and Keeton on Torts* § 121 at 897 (5th ed. 1984) ("Abuse of process differs from [a claim for wrongful use of civil proceedings] in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish."). Thus, in a claim for abuse of process, the allegations must describe not just misuse of process, but misuse "for some wrongful and unlawful object, or ulterior purpose." *Kool*, 134 P. at 909.

¶ 14 This ulterior purpose usually involves "coerci[ng] another through the use of process] to obtain [something] . . . such as the

---

2. A notable exception to this general rule permits a trial court to consider evidence outside of the pleadings to determine a date of loss for purposes of the running of a statute of limitations. *See Tucker v. State Farm Mut. Auto. Ins. Co.*, 2002 UT 54, ¶¶ 10–11, 53 P.3d 947.

surrender of property or the payment of money," W. Keeton, *Prosser and Keeton on Torts* § 121 at 898 (5th ed.1984), or "compelling [the] victim to do something which he would not otherwise be legally obliged to do," *Crease v. Pleasant Grove City*, 30 Utah 2d 451, 519 P.2d 888, 890 (1974); *see also Hatch v. Davis*, 2004 UT App 378, ¶ 35, 102 P.3d 774 (acknowledging as an improper purpose, an attempt "to intimidate the residents of the town as well as the town council *to comply* with [the alleged process abuser's] narrow and peculiar political and philosophical positions" (emphasis added)), *aff'd in part and remanded in part*, 2006 UT 44, 147 P.3d 383. Regardless of the exact ulterior purpose, it is always an object for the process abuser's "collateral advantage," W. Keeton, *Prosser and Keeton on Torts* § 121 at 899 (5th ed. 1984), and it must be "an immediate purpose," Restatement (Second) of Torts § 682 cmt. b (1977).

¶ 15 Plaintiffs here have failed to state a claim for abuse of process because they have failed to allege any ulterior purpose behind the Gendrons' misuse of process. Plaintiffs alleged that the Gendrons "used the civil process against [Plaintiffs] primarily to accomplish a purpose for which it was not designed," that "[t]he civil process system is not designed to prosecute false claim[s] supported by perjured testimony," that the Gendrons knew of the falsity of their claims and testimony, that the Gendrons acted with malice, that the lawsuit was resolved in Plaintiffs' favor, and that the Gendrons' actions caused Plaintiffs to incur attorney fees. While this may state the first element of a claim for wrongful use of civil proceedings, it lacks an allegation regarding an ulterior purpose or collateral advantage that the Gendrons hoped to gain through filing a false counterclaim or giving false testimony.

▮▮▮ ¶ 16 Elsewhere in their complaint, Plaintiffs make general averments that the Gendrons initiated the counterclaim "to intimidate [them] and to injur[e their] business reputation," and gave false testimo-

ny to "help[ ] prevent the prosecution of the lawsuit on its merits." However, allegations of intimidation and desire to hurt a reputation, alone, do not suggest an advantage or gain the Gendrons would receive collateral to the proceedings. "[T]here is no abuse of process when [an] action is filed to intimidate and embarrass the defendant knowing there is no entitlement to recover the full amount of damages sought." *Lyons v. Midwest Glazing, LLC*, 235 F.Supp.2d 1030, 1043 (N.D.Iowa 2002), *quoted with approval in Hatch*, 2004 UT App 378, ¶ 35, 102 P.3d 774; *see also* W. Keeton, *Prosser and Keeton on Torts* § 121 at 897 (5th ed.1984) (explaining that "even a pure spite motive is not sufficient [to state a claim for abuse of process] where process is used only to accomplish the result for which it was created"). Likewise, complicating the course of litigation and increasing the costs of defense do not qualify as a collateral advantage or ulterior purpose for the claim of abuse of process. *See Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1266–67 (10th Cir.2003) (holding that, regardless of labels given, a plaintiff stated a claim for wrongful use of civil proceedings rather than abuse of process where the plaintiff alleged that a previous "action was brought in bad faith and without a justifiable basis for the purpose of obtaining [certain benefits]" and that the previous action "involved the [plaintiffs] in extensive and costly litigation"). In the absence of an allegation of some object the Gendrons wished to gain outside of the proceeding itself, Plaintiffs have failed to state a cause of action for abuse of process.[3]

## C. Perjury and Obstruction of Justice

▮▮ ¶ 17 Plaintiffs contend that the trial court erred in dismissing their civil perjury cause of action on the basis that Utah does not recognize such a tort and that the trial court erred in dismissing their obstruction of justice claim by considering outside evidence. As noted above, the trial court improperly considered evidence outside the pleadings to adjudicate Plaintiffs' claims. We nonetheless

---

**3.** In so ruling, we do not condone improper litigation tactics. We merely acknowledge that such actions, alone, do not rise to the level of abuse of process. Other means, such as rule 11 or discovery sanctions, are available to address such misbehavior. *See* Utah R. Civ. P. 11(c); *id.* R. 37.

affirm the trial court's dismissal of both claims because, as was explained in *Cline v. State*, 2005 UT App 498, 142 P.3d 127, Utah does not recognize a private right of action for perjury or obstruction of justice.

¶ 18 In *Cline*, this court stated that "[t]he existence of criminal liability does not create automatically a corresponding claim for civil damages." *Id.* ¶ 29. We therefore refused to "create a private right of action [for perjury and obstruction of justice, among other violations of Utah criminal law,] when the legislature has not seen fit to do so." *Id.* (internal quotation marks omitted). This refusal was based on the long-standing approach to statutory interpretation that prevents courts from creating a private right of action "[w]hen a statute makes certain acts unlawful and provides criminal penalties for such acts, but does not specifically provide for a private right of action." *Id.* (internal quotation marks omitted).

¶ 19 Although Plaintiffs acknowledge Utah's lack of a private right of action for perjury and obstruction of justice, they nonetheless argue that the absence of such causes of action violates Article I, Section 11 of the Utah Constitution, the "open courts" provision. "Article I, [Section] 11 of the Utah Constitution, which prescribes that all courts shall be open and persons shall not be barred from using them to redress injuries, was not meant to create a new remedy or a new right of action." *Madsen v. Borthick*, 658 P.2d 627, 629 (Utah 1983) (citing *Brown v. Wightman*, 47 Utah 31, 151 P. 366, 367 (1915)). Rather, the open courts provision was intended to place "a limitation upon the [l]egislature to prevent that branch of the state government from closing the doors of the courts against any person who has a legal right which is enforceable in accordance with some *known* remedy." *Brown*, 151 P. at 366–67 (emphasis added). Thus, Article I, Section 11 of the Utah Constitution does not require this court to create a particular tort remedy where one does not already exist because it has long been "held that where no right of action is given or no remedy exists under either the common law or statute, this section creates none." *Burton v. Exam Ctr. Indus. & Gen. Med. Clinic, Inc.*, 2000 UT 18,

¶ 18, 994 P.2d 1261 (citing *Brown*, 151 P. at 367).

¶ 20 Plaintiffs offer no argument as to why Article I, Section 11 of the Utah Constitution should now be interpreted any differently than it has been for the past ninety-three years. We affirm the dismissal of Plaintiffs' claims for obstruction of justice and civil perjury because Utah does not recognize a private right of action for them.

### D. Civil Conspiracy

¶ 21 Plaintiffs claim that the trial court erred in determining that they failed to state a claim for civil conspiracy by failing to allege a meeting of the minds between William and Peter Gendron. The claim of civil conspiracy "require[s], as one of [its] essential elements, an underlying tort." *Coroles v. Sabey*, 2003 UT App 339, ¶ 36, 79 P.3d 974; *see also Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct.App.1987) (listing the elements for a claim of civil conspiracy). Thus, in order to "sufficiently plead" a claim for civil conspiracy, a plaintiff is "obligated to adequately plead the existence of such a tort." *Coroles*, 2003 UT App 339, ¶ 36, 79 P.3d 974. Where plaintiffs have "not adequately pleaded *any* of the basic torts they allege ... dismissal of their civil conspiracy claim" is appropriate. *Id.* ¶ 38; *see also* 16 Am.Jur.2d *Conspiracy* § 50 (1998) ("[I]f the acts alleged to constitute the underlying wrong provide no cause of action, then neither is there a cause of action for the conspiracy itself.").

¶ 22 In this case, as discussed above, Plaintiffs have not adequately pleaded any of the torts that underlie their civil conspiracy claim. For this reason, their civil conspiracy claim fails to state a claim upon which relief may be granted. Accordingly, we do not reach the issue of whether Plaintiffs properly pleaded a meeting of the minds between the Gendrons.

### II. Motion for Leave to Amend

¶ 23 Plaintiffs claim that the trial court abused its discretion when it refused to grant them leave to amend their complaint because leave to amend should be liberally

granted. It is true that leave to amend "shall be freely given when justice so requires." Utah R. Civ. P. 15(a). However, "[t]o properly move for leave to amend a complaint, a litigant must file a motion that 'shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought.'" *Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 57, 48 P.3d 895 (quoting Utah R. Civ. P. 7(b)(1) (2000)(amended 2003)). Additionally, "a motion for leave to amend must be accompanied by a memorandum of points and authorities in support, . . . and by a proposed amended complaint." *Id.* (citation omitted). A motion made at "the end of the memoranda opposing [a] motion[] to dismiss . . . d[oes] not comply with Utah's formal motion practice rules." *Id.* ¶ 59. In other words, "abbreviated requests for leave to amend [a] complaint lacking . . . statements of the grounds for amendment and dangling at the end of [the] memorand[a, do] not rise to the level of a motion for leave to amend." *Id.* (omission and third alteration in original) (internal quotation marks omitted). Thus, a court does not abuse its discretion in denying a request for leave to amend where the request is so abbreviated that it fails to "articulate[] a single reason why the trial court should . . . grant[] . . . leave to amend . . . [or] provide[] the trial court a proposed amended complaint so that the court c[an] determine the changes that [the party] intend[s] to make." *Id.*

¶ 24 The trial court did not abuse its discretion in denying Plaintiffs' request for leave to amend their complaint because Plaintiffs did not comply with Utah's formal motion practice rules when they made the request. Their entire request for leave consisted of one sentence at the end of their memorandum opposing the Gendrons' motion to dismiss. Plaintiffs did not support their request for leave with a memorandum of points and authorities, submit a proposed amended complaint, or otherwise articulate any specific reason why the court should grant them leave to amend.[4]

## CONCLUSION

¶ 25 Although the trial court improperly considered factual determinations made in previous proceedings rather than accepting the facts alleged in Plaintiffs' complaint as true, we nonetheless affirm the trial court's dismissal of Plaintiffs' claims because Plaintiffs failed to state a claim for which relief could be granted. Additionally, the trial court did not abuse its discretion in denying Plaintiffs' request to amend their complaint because Plaintiffs failed to properly make the request. Because these issues are dispositive, we do not reach the parties' arguments regarding the statute of limitations.

¶ 26 We affirm.

¶ 27 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge and CAROLYN B. McHUGH, Judge.

---

4. Plaintiffs also contend that the trial court abused its discretion by failing to state a reason for its denial of their motion to amend. Although "outright refusal to grant . . . leave without any justifying reason appearing for the denial" may constitute an abuse of discretion, *Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*, 970 P.2d 1273, 1281 (Utah 1998), "[a trial court] does not necessarily abuse its discretion if the reason for denial is apparent," *id.* at 1282. In this case, the reason for denial is apparent.