**2024 UT App 154**

# THE UTAH COURT OF APPEALS

JAMES MARLO DUFFIN JR.,
Appellant,
*v.*
BRANDY ELIZABETH DUFFIN,
Appellee.

Opinion
No. 20221046-CA
Filed October 31, 2024

BRANDY ELIZABTH DUFFIN,
Appellee,
*v.*
JAMES M. DUFFIN III,
Appellant.

Opinion
No. 20221047-CA
Filed October 31, 2024

BRANDY ELIZABETH DUFFIN,
Appellant,
*v.*
JAMES MARLO DUFFIN JR. AND JAMES M. DUFFIN III,
Appellees.

Opinion
No. 20221098-CA
Filed October 31, 2024

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 200900444

Troy L. Booher and Taylor P. Webb,
Attorneys for James Marlo Duffin Jr.

Julie J. Nelson and Mitchell J. Olsen, Jr.,
Attorneys for James M. Duffin III

T. Jake Hinkins and Renee L.H. Blocher,
Attorneys for Brandy Elizabeth Duffin

—————

JUDGE JOHN D. LUTHY authored this Opinion, in which JUDGES MICHELE M. CHRISTIANSEN FORSTER and AMY J. OLIVER concurred.

—————

LUTHY, Judge:

¶1  While James M. Duffin III (James[1]) and Brandy Elizabeth Duffin were married, they worked with a builder to construct a house (the Property), which they moved into after it was completed. When James and Brandy later sought a divorce, James argued that his father, James Marlo Duffin Jr. (Marlo), who had paid at least $410,875.42 of the $429,875.42 purchase price for the Property, owned the Property. Without resolving the issue of who owned the Property, the court presiding over the divorce found that any interest James or Brandy had in the Property was not marital property. We reversed that decision upon Brandy's appeal, concluding that whatever interest James or Brandy had in the Property—if any—was marital property. *See Duffin v. Duffin*, 2022 UT App 60, ¶ 32, 511 P.3d 1240, *cert. denied*, 525 P.3d 1262 (Utah 2022).

¶2  During the pendency of the divorce proceedings, Marlo filed a quiet title action against James and Brandy, requesting a declaration that Marlo is the owner of the Property. Brandy brought a counterclaim against Marlo for civil conspiracy and crossclaims against James for negligent misrepresentation, fraudulent non-disclosure, fraudulent conveyance, civil conspiracy, and a violation of Utah's Uniform Voidable

———

1. Because the parties share a surname, we refer to them by first names, with no disrespect intended by the apparent informality. Moreover, because two of the parties share a given name, we distinguish them according to the names used in the briefing.

Transactions Act (the UVTA). She also sought a declaratory judgment "that James had a legal interest in the Property."

¶3 Brandy later filed a motion for summary judgment on her claims against James, relying on the fact that James had failed to provide initial disclosures. James did not respond to that motion, and the district court granted summary judgment against him subject to a trial on the issue of damages. Marlo then argued that he could not receive a fair jury trial if the issue of his liability was going to be tried together with the issue of damages as to James because in such a trial, the court would inform the jury that James was already liable for civil conspiracy and Marlo was the only possible co-conspirator. The court rejected that argument, and a jury subsequently found that James was the sole owner of the Property and that James and Marlo were liable for civil conspiracy. The jury awarded Brandy compensatory and punitive damages against both James and Marlo. Each party now appeals, and this opinion resolves all three appeals.

¶4 James appeals the district court's grant of Brandy's unopposed summary judgment motion. We conclude that Brandy's summary judgment motion did not establish a basis for judgment as a matter of law and that the court thus erred by granting summary judgment against James. We therefore reverse the grant of summary judgment and vacate the subsequent damages awards and associated declaratory judgment.

¶5 Marlo appeals the district court's decision not to bifurcate his and James's trials. We determine that the court abused its discretion by not bifurcating the trials. Thus, we vacate the judgment against Marlo, including the damages awards and the associated declaratory judgment.

¶6 Brandy appeals the punitive damages awards that were entered in her favor, asserting that the amounts of those awards were inadequate in light of the compensatory damages awarded in her favor. Because our resolution of James's and Marlo's

appeals results in our vacating the punitive damages awards Brandy now contests, we dismiss Brandy's appeal as moot.

BACKGROUND

*The Purchase of the Property*

¶7      James and Brandy were married in 2015. *See Duffin v. Duffin*, 2022 UT App 60, ¶ 2, 511 P.3d 1240, *cert. denied*, 525 P.3d 1262 (Utah 2022). They sought and obtained preapproval for a home loan of up to $360,000, and in April 2016 they entered into a purchase agreement with Ivory Homes for a home to be constructed in West Jordan. *See id.* ¶ 3. James paid a security deposit of $1,000 to Ivory Homes from an account in his name, though he later admitted that money from Brandy's income may also have been in that account. *See id.* ¶ 3 & n.2. James later testified that Marlo reimbursed him for the $1,000. *See id.* ¶ 3.

¶8      In June 2016, James's grandfather paid $18,000 to Ivory Homes as a pre-construction deposit, which "James asserted . . . was actually an advance on [Marlo's] inheritance" from the grandfather. *Id.* ¶ 4. In February 2017, on the day before closing, James sent an email to Marlo titled "Loan Contract," which said that Marlo was "dispensing a loan of $429,875.42 to purchase [the Property]" and that James was responsible for repaying the loan. *Id.* ¶ 5. The next day, Marlo paid the outstanding balance on the Property—$410,875.42—to the title company. *See id.* ¶¶ 1, 4. A warranty deed listing only James as grantee of the Property was then recorded, and James and Brandy moved into the home. *See id.* ¶ 6.

¶9      In February 2018, James executed and recorded a new warranty deed adding Marlo to the title of the Property. *See id.* ¶ 7. Later, "Brandy contended that the 'marriage was struggling and divorce was a very real possibility' at the time James added [Marlo] to the title of the [P]roperty." *Id.*

*The Divorce Proceedings*

¶10   James and Brandy separated in July 2018, and the following month, James petitioned for divorce. *See id.* ¶ 8. In the divorce proceedings, Brandy requested that the Property be sold and the equity be divided equally between her and James. *See id.* ¶ 10. James asserted that he had purchased the Property on Marlo's behalf, though James admitted he had never informed anyone that he was acting as Marlo's agent and he was unaware of any written evidence indicating that he had been acting on Marlo's behalf. *See id.* ¶ 11.

¶11   Marlo also testified that James was acting on his behalf and that he never intended the Property to be a gift to James. *See id.* ¶ 12. Like James, Marlo admitted to the lack of documentary evidence of an agency relationship between him and James. *See id.* But he said, "[I]t was always understood between my son and me that that was my house." *Id.* Marlo stated that although he had discussed the Property with James many times, he had never had any conversation with Brandy about the financial aspects of the purchase. *See id.* ¶ 14.

¶12   Brandy agreed that she had never had a conversation with Marlo about the financial aspects of the purchase of the Property, and she testified that James had never talked to her about purchasing the Property on Marlo's behalf. *See id.* ¶ 15. She stated that she and James chose the floorplans and finishings, that James never indicated a need to check with Marlo about design choices, that the $1,000 deposit was from their comingled funds, and that she and James completed landscaping on the Property and added various outdoor features, including a cement pad, fence, and basketball standard. *See id.*

¶13   The court presiding over the divorce found that the Property was not marital property, and Brandy appealed that determination. *See id.* ¶¶ 16, 20. This court reversed, saying, "The extent to which Brandy and James even have an interest in the [P]roperty is an issue that will be decided in the separate lawsuit

[filed by Marlo] . . . . But to the extent they are adjudicated to have an interest in the [Property], that interest is marital property subject to equitable distribution between them." *Id.* ¶ 32.

*The Origins of the Present Case*

¶14　The present case—i.e., the "separate lawsuit" referenced in our opinion resolving the divorce appeal—began as a quiet title action filed by Marlo against both Brandy and James in January 2020, during the pendency of the divorce proceedings. In his complaint, Marlo alleged that he was "the true and legal owner of the Property." He also asserted a claim of conversion against Brandy, and he later amended his complaint to include claims against Brandy for waste and unjust enrichment as well.

¶15　Brandy filed an answer, a counterclaim against Marlo, and a crossclaim against James. In her counterclaim, she alleged civil conspiracy against Marlo. In her crossclaim, she alleged negligent misrepresentation, fraudulent non-disclosure, fraudulent conveyance, and civil conspiracy against James. Brandy later amended her crossclaim and her counterclaim to allege that James and Marlo had also violated the UVTA, though she ultimately dismissed that claim as against Marlo. In her amended pleadings, Brandy further sought a declaratory judgment "that James had a legal interest in the Property."

¶16　In April 2021, James and Marlo answered Brandy's amended crossclaim and amended counterclaim. In his answer, James stated (among other things) that although he had previously been a resident of Salt Lake County, he was now a resident of Utah County. Then in June 2021, James's counsel withdrew and identified the Property, which is in Salt Lake County, as James's last known address, and he mailed his notice of withdrawal to that address. James claims that he never received a copy of the notice of withdrawal because he was then living in Utah County. In July 2021, Brandy filed a notice for James and Marlo to appear or appoint counsel, and she mailed that notice to James at the Property and to Marlo at a different Salt Lake County

address. James claims that Brandy and her counsel were aware he was then living in Utah County and that he never received that notice either.

*Brandy's Motion for Summary Judgment*

¶17   In September 2021, Brandy filed a motion for summary judgment. In her statement of undisputed material facts, Brandy stated only that "[t]he parties have differing views on many aspects of this case," that Marlo had failed to "disclose any computation of damages" or "provide any sort or semblance of an itemized list of the specific property items that Brandy [was] alleged to have taken or damaged," and that "James [had] provided no initial disclosures." In the argument portion of her motion, Brandy argued that Marlo's failures caused his claims of conversion, unjust enrichment, and waste to fail as a matter of law and that those claims should be dismissed with prejudice.

¶18   As to James, she argued,

> James has not complied at all with his initial disclosure requirements in this case. Accordingly, his answer to the amended cross-claim in this matter should be stricken and Brandy should be awarded judgment against James as requested in her amended cross-claim. At a minimum, for all of the reasons set forth herein, James should be precluded from putting on any evidence at trial, since he did not provide any disclosures in this case.

James claims he did not receive the summary judgment motion, which Brandy mailed to the Property.

¶19   Neither James nor Marlo responded to Brandy's motion, and in December 2021, the district court granted summary judgment in Brandy's favor. In its order, the court stated,

1. [Marlo] did not disclose any computation of damages, fact discovery and expert discovery is over and no supplement or attempt to do so has been provided. Accordingly, he cannot provide evidence that would support any award of damages and his remaining claims fail as a matter of law.

2. All of [Marlo's] claims are dismissed with prejudice.

3. [James] did not provide any initial disclosures in this case, and fact and expert discovery is now closed. Because of his failure to comply with his [r]ule 26 disclosure requirements, his answer to the amended crossclaim is stricken and judgment is granted in favor of [Brandy], subject to a trial on damages.

Because Brandy did not seek summary judgment on her crossclaim against Marlo for civil conspiracy, the court did not rule on that claim.

*James's Motions to Set Aside*

¶20   In February 2022, James moved the court to set aside its summary judgment order against him, contending that the order was based on mistake and excusable neglect. *See generally* Utah R. Civ. P. 60(b)(1) ("On motion and upon just terms, the court may relieve a party or its legal representative from a judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect."). Among other things, he asserted that Brandy already "had in her possession all documents [he] would have included in his Initial Disclosures" because he had provided them to her in the divorce action.

¶21   Marlo filed a memorandum in support of James's motion, and at a hearing on the motion, Marlo's counsel explained Marlo's objection to the summary judgment order. Marlo's counsel

asserted that "[e]ach and every one of Brandy's causes of action, whether it's against Marlo or against James, . . . include essentially the same set of facts." He then argued that "[i]f the claims involving James . . . have already been decided, then [Marlo] walks into court already facing an uphill battle." Not only would Marlo have to defend himself from the claims alleged against him, Marlo's counsel explained, but he would have "to overcome this presumption that the jury will have that, well, if James is liable, then obviously Marlo must be liable." Marlo's counsel expressed doubt that lay jurors would be able to fairly adjudicate Marlo's liability where James had already been deemed liable, regardless of what instructions the jury might receive. He contended that approaching trial that way would be "unduly burdensome" and "unduly prejudicial" and would not give Marlo "a fair shake at trial." Ultimately, he stated that while there was not a motion before the court to bifurcate the trial, "[i]n reality, if the court is intent on keeping the [summary judgment] order . . . [,] the issues should probably be bifurcated, where [Marlo] can try and prove his claims independent of [the] already decided claims against James."

¶22 The district court denied James's motion to set aside the summary judgment order. The court stated that it was James's "obligation to keep the [c]ourt apprised of the proper address for service" and that the various filings "were served correctly." Regarding initial disclosures, the court was not satisfied that Brandy had necessarily been provided with all of the necessary information through James's disclosures in the divorce case. It determined that "[w]ithout disclosures [in this case], Brandy is in a poor position to guess at how this case will be defended." The court continued, "With respect to confusion among the jury, it is no different than a case where one party has defaulted and does not appear at trial, but for purposes of the case has admitted to the allegations in the complaint, whereas the other party continues to defend. The [c]ourt can handle that potential issue at trial."

*Duffin v. Duffin*

¶23    James then filed a second motion to set aside the summary judgment order. This time, James asserted that the court had in essence "imposed discovery sanctions and entered a default judgment" by granting summary judgment based on his lack of response to Brandy's motion and his lack of initial disclosures. He argued that rules 26 and 37 of the Utah Rules of Civil Procedure "are the proper vehicles for addressing discovery disputes," that those rules "impose mandatory processes and certifications prior to a court imposing sanctions," and that "Brandy did not comply with any of these required steps." James continued, "Viewing the matter through the lens of a summary judgment, Brandy failed to meet her burden of proof on her claims. James is the defendant— he need not put on any evidence to prevail. Brandy's unverified motion presented no evidence. She cannot have been found to have satisfied her burden."

¶24    The court denied James's second motion to set aside the summary judgment order. The court reasoned,

> [T]his is not unusual to have summary judgment based on a failure to make disclosures. It's not a sanction. It's simply a motion that says this person is not in a position to oppose my case. We can dig into whether the summary judgment was proper, but that's just not something we need to do in terms of an unopposed motion.

*The Trial and Jury Instructions*

¶25    The case then proceeded to a jury trial. During the trial, the court granted Marlo's motion for a directed verdict as to Brandy's fraudulent non-disclosure claim against him but denied the motion with respect to her civil conspiracy claim against him.

¶26    Before deliberation, the court read the various jury instructions. Instruction 23 was the court's effort to clarify that the jury was to independently determine whether Marlo was liable for civil conspiracy even though James had already been deemed

liable for civil conspiracy. In relevant part, Instruction 23 read as follows:

> Brandy's claims against Marlo are for: 1) fraudulent non-disclosure; 2) civil conspiracy; and 3) for declaratory judgment.

> Brandy's claims against [James] are for: 1) Negligent Misrepresentation; 2) Fraudulent Non-Disclosure; 3) Fraudulent Conveyance; 4) Civil Conspiracy; 5) violation of [the UVTA] against him; and 6) declaratory judgment. The [c]ourt has already determined that [James] is responsible, due to procedural issues, to Brandy for the first 5 causes of action, with Brandy bearing the burden of now proving the extent that she has been damaged by [James] and that she is entitled to money damages.

> You are instructed to make independent findings as it relates to each defendant. You may make one set of findings against one defendant and a different set of findings against the other defendant. Therefore, the [c]ourt's previous ruling as it related to [James] being responsible to Brandy shall have no impact on how you come to independent findings as it relates to Marlo's liability in this matter.

> The [c]ourt has also previously determined that [James] had a legal interest in the [Property]. As part of Brandy's claim for declaratory judgment, you will be charged with determining the extent of [James's] and/or Marlo's respective interests in the [P]roperty.

*The Verdict and Appeals*

¶27    The jury returned a verdict in favor of Brandy via a special verdict form. The first question on the form read, "As of immediately before the divorce was finalized, what percentage of ownership in the [P]roperty belongs to Marlo and [James], respectively? The combination of percentage must equal 100% and you may allocate 0% to 100% for each individual." The jury wrote 0% for Marlo and 100% for James.

¶28    Regarding civil conspiracy, the jury was asked, "Did you find by clear and convincing evidence that Marlo and [James] engaged in a civil conspiracy consisting of one or more unlawful, overt acts relating to the [Property]?" The jury checked "YES." It also checked "YES" for the question "Do you find by clear and convincing evidence that Brandy suffered monetary damages as a result of a civil conspiracy relating to the property at issue?" The jury awarded Brandy $205,500 in damages on this issue.

¶29    As to Brandy's claim against James for negligent misrepresentation, the jury found that she had proved by a preponderance of the evidence that she had been damaged, and it awarded her $5,000.

¶30    On Brandy's claim against James for fraudulent non-disclosure, the jury found that she had proved by clear and convincing evidence that she had been damaged, and it awarded her $106,000.

¶31    With regard to Brandy's claim against James for fraudulent conveyance, the jury found that Brandy had not proved by clear and convincing evidence that she had been damaged.

¶32    As to Brandy's claim that James violated the UVTA, the jury found that she had not proved by a preponderance of the evidence that she had been damaged.

¶33    Finally, the jury found grounds for punitive damages awards against both James and Marlo, and it awarded Brandy

punitive damages of $5,137.50 against Marlo and $10,687.50 against James.

¶34 The court then entered judgment according to the jury's verdict, and each of the parties now appeals.

ISSUES AND STANDARDS OF REVIEW

¶35 In his appeal, James argues that the district court erred by granting Brandy's summary judgment motion. "We review a grant of summary judgment for correctness. We give no deference to the district court's legal conclusions and consider whether the court correctly decided that no genuine issue of material fact existed. We review the facts in a light most favorable to the party against whom summary judgment was granted." *Heslop v. Bear River Mutual Ins. Co.*, 2017 UT 5, ¶ 15, 390 P.3d 314 (cleaned up).[2]

¶36 In his appeal, Marlo asserts that the district court abused its discretion by failing to bifurcate his and James's trials. We review a court's bifurcation decision for an abuse of discretion. *See Tobler v. Tobler*, 2014 UT App 239, ¶ 17, 337 P.3d 296.[3]

---

2. James also asserts that the district court erred by denying his motions to set aside the summary judgment order. Because we reverse the grant of summary judgment, we need not separately address this issue. Additionally, James contends that the court's striking of his answer and granting summary judgment to Brandy violated his constitutional due process rights. Because we reverse the grant of summary judgment and vacate the subsequent damages awards, we need not address this issue either.

3. Marlo raises various other issues that we need not address because we reverse and remand the matter for a new trial based on the lack of bifurcation under these circumstances. However, we note one issue that is likely to arise on remand—whether a

(continued…)

¶37   In her appeal, Brandy contends that the jury's punitive damages awards were inadequate. Because we reverse the grant of summary judgment and damages awards as to James as well as the jury's verdict and damages awards as to Marlo, Brandy's argument is moot and we do not address it.

ANALYSIS

I. James's Appeal

¶38   James argues that "[t]he district court erred in granting summary judgment to Brandy" and "in imposing discovery sanctions without requiring Brandy to use the mandated processes to resolve discovery disputes." We agree.

¶39   Under rule 56 of the Utah Rules of Civil Procedure, summary judgment is merited when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). "Even where a summary judgment motion stands unopposed, a district court is still obligated to examine the filed motion, and [the court] must still determine whether the moving party's pleadings, discovery, and affidavits demonstrate its entitlement to judgment as a matter of law." *Turley v. Childs*, 2022 UT App 85, ¶ 27, 515 P.3d 942 (cleaned up); *see id.* ¶ 28 ("[A] district court must review the moving papers, and [it] may not grant the motion without conducting such a review simply because the motion is unopposed."). "And where the moving party would bear the burden of proof at trial, the movant must establish each element of [the movant's] claim in order to show that [the movant] is entitled to judgment as a matter of law." *Id.* (cleaned up); *see also* Utah R. Civ. P. 56(e)(3) ("[T]he court may . . . grant summary judgment if the motion and supporting

_____

question of damages under the UVTA may be presented to a jury—so we provide guidance on this issue in our analysis below.

materials—including the facts considered undisputed—show that the moving party is entitled to it . . . .").

¶40 Moreover, we have held that on a nonmovant's appeal from the grant of an unopposed summary judgment motion, "we must review for correctness the question of whether the movant's papers, on their face, indicate that the movant is entitled to judgment as a matter of law." *Turley*, 2022 UT App 85, ¶ 29. "That is, we must satisfy ourselves—just as district courts must—that the requirements of rule 56 are met on the face of the moving papers." *Id.* Here, we are not satisfied that the requirements of rule 56 are met on the face of Brandy's moving papers.

¶41 Rule 56 requires a party requesting summary judgment to provide "a statement of material facts claimed not to be genuinely disputed" and to support each assertedly undisputed fact with a citation "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Utah R. Civ. P. 56(a)(1), (c)(1)(a). The movant must then show that based on the material facts that are not genuinely in dispute, "the moving party is entitled to judgment as a matter of law." *Id.* R. 56(a).

¶42 The only assertedly undisputed fact bearing on Brandy's claims against James that Brandy supported with a citation to the record was that "James provided no initial disclosures." Brandy then argued for summary judgment against James by saying only, "James has not complied at all with his initial disclosure requirements in this case. Accordingly, his answer to [Brandy's] amended cross-claim in this matter should be stricken and Brandy should be awarded judgment against James as requested in her amended cross-claim." Brandy's argument did not identify the elements of any of her causes of action against James, and her statement of undisputed facts did not include facts showing that she could satisfy the elements of any of those claims and was therefore entitled to judgment as a matter of law. Because the requirements for Brandy to receive judgment as a matter of law

against James are not met on the face of her summary judgment papers, the district court erred by granting Brandy's summary judgment motion against James.

¶43 Instead of analyzing whether the facts in Brandy's statement of undisputed material facts satisfied the elements of her claims against James, the court stated, "[James] did not provide any initial disclosures in this case, and fact and expert discovery is now closed. Because of his failure to comply with his [r]ule 26 disclosure requirements, his answer to the amended crossclaim is stricken and judgment is granted in favor of [Brandy], subject to a trial on damages." In so saying, the court essentially imposed on James the sanctions provided under rule 37 of the Utah Rules of Civil Procedure. *See id.* R. 37(b)(4) ("Unless the court finds that the failure was substantially justified, the court, upon motion, may impose appropriate sanctions for the failure to follow its orders [regarding rule 26 disclosures], including . . . strik[ing] all or part of the pleadings, or render[ing] judgment by default on all or part of the action."); *see also Eskamani v. Auto-Owners Ins. Co.*, 2020 UT App 137, ¶ 51, 476 P.3d 542 ("Although rule 26 provides for the exclusion of documents and witnesses that are not timely disclosed, it does not authorize the exclusion of entire claims or defenses. Such requests for sanctions are governed by rule 37." (cleaned up)).

¶44 However, rule 37 sets forth the process for obtaining such sanctions, stating, "A party or the person from whom discovery is sought may request that the judge enter an order regarding any discovery issue, including . . . failure to disclose under [r]ule 26," and, "The statement of discovery issues . . . must include . . . a certification that the requesting party has in good faith conferred or attempted to confer with the other affected parties in person or by telephone in an effort to resolve the dispute without court action." Utah R. Civ. P. 37(a)(1), (a)(2). Brandy did not meet these requirements. Thus, the district court's imposition of rule 37 sanctions was not an appropriate response to her summary judgment motion against James.

¶45 For the foregoing reasons, we reverse the grant of summary judgment against James and vacate the subsequent damages awards and declaratory judgment entered against him.[4]

## II. Marlo's Appeal

¶46 Marlo also appeals, including on the basis that the district court abused its discretion by not bifurcating his and James's trials. We agree that the district court abused its discretion in this regard. But because Brandy argues that the bifurcation issue was not preserved, we begin with a discussion of preservation.

### A. Preservation

¶47 "To preserve an issue for appellate review, a party must first raise the issue in the trial court, giving that court an opportunity to rule on the issue." *Searle v. Searle,* 2001 UT App 367, ¶ 17, 38 P.3d 307 (cleaned up). "For an issue to be sufficiently raised, even if indirectly, it must at least be raised to a level of consciousness such that the trial judge can consider it." *Weiser v.*

---

4. Our ruling here does not preclude imposition on remand of rule 26's exclusionary sanction if James is unable to show that his failure to produce initial disclosures was either justified or harmless. *See* Utah R. Civ. P. 26(d)(4) ("If a party fails to disclose . . . , that party may not use the undisclosed witness, document, or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure."); *Dahl v. Harrison*, 2011 UT App 389, ¶ 22, 265 P.3d 139 ("[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that the violation of rule 26(a) was either justified or harmless."), *abrogated on other grounds by R.O.A. Gen., Inc. v. Chung Ji Dai,* 2014 UT App 124, 327 P.3d 1233. Imposition of rule 26's exclusionary sanction would not alone entitle Brandy to summary judgment against James. To obtain summary judgment, she would still be required to demonstrate that the undisputed material facts in the record—absent the excluded evidence—entitle her to judgment as a matter of law.

*Union Pac. R.R.*, 2010 UT 4, ¶ 14, 247 P.3d 357 (cleaned up). This standard was satisfied here.

¶48 During the hearing on James's first motion to set aside the court's grant of summary judgment to Brandy, Marlo's counsel asserted that "[e]ach and every one of Brandy's causes of action, whether it's against Marlo or against James, . . . include essentially the same set of facts." He then contended that "[i]f the claims involving James . . . have already been decided, then [Marlo] walks into court already facing an uphill battle, where not only does he have to defend against his claims, he's got to overcome this presumption that the jury will have that . . . if James is liable, then obviously Marlo must be liable." Marlo's counsel was doubtful that lay jurors would be able to fairly adjudicate Brandy's claims against Marlo in this circumstance, and he did not think jury instructions would be sufficient to address this issue, regardless of their content. Marlo's counsel contended that approaching trial together with James already having been found liable would be "unduly burdensome" and "unduly prejudicial" to Marlo and would not give Marlo "a fair shake at trial." Marlo's counsel then, while acknowledging that there was not a motion before the court to bifurcate the trial, said, "In reality, if the court is intent on keeping the order for motion for summary judgment, . . . the issues should probably be bifurcated, where [Marlo] can try and prove his claims independent of [the] already decided claims against James." Accordingly, the district court heard Marlo's reasons for believing that a joint trial would be prejudicial to him. It also heard Marlo's counsel ask that summary judgment against James be set aside or, in the alternative, that the court order bifurcation.

¶49 What's more, the district court actually ruled on this issue. In denying James's motion to set aside the summary judgment order, the court said, "With respect to confusion among the jury, it is no different than a case where one party has defaulted and does not appear at trial, but for purposes of the case has admitted to the allegations in the complaint, whereas the other party continues to defend. The [c]ourt can handle that potential issue at

trial." This ruling captured the court's determination that a joint trial would not unduly burden or prejudice Marlo because, instead of bifurcation, the court could adequately manage any potential for confusion and prejudice at trial through jury instructions. While the court did not use the word bifurcation, its ruling that it could "handle that potential issue at trial" plainly rejected Marlo's argument that either the summary judgment should be set aside or the trial should be bifurcated. In sum, the issue of whether Marlo could receive a fair joint trial of Brandy's claims against him where the jury would be instructed that Brandy had already prevailed on all of her claims against James was raised to a level of consciousness such that the trial judge could and did consider it. Accordingly, this issue was preserved, and we next consider the merits of Marlo's appeal on this point.

B.     Bifurcation

¶50     Marlo claims that the district court abused its discretion by not bifurcating the trial. Under the unique circumstances of this case, we agree.

¶51     The Utah Rules of Civil Procedure provide that "[t]he court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross claim, counterclaim, or third party claim, or of any separate issue or of any number of claims, cross claims, counterclaims, third party claims, or issues." Utah R. Civ. P. 42(b). "Because this rule gives the trial court considerable discretion to administer the business of its docket and determine how a trial should be conducted, this court will not disturb [a] trial court's bifurcation order unless the trial court abused its discretion." *Sandusky v. Sandusky*, 2018 UT App 34, ¶ 3, 417 P.3d 634 (cleaned up). "Generally, a trial court abuses its discretion if its decision exceeds the limits of reasonability." *Id.* (cleaned up). A court's decision not to bifurcate is an abuse of discretion where it "sacrifices [a party's] right to a fundamentally fair trial." *State v. Pierre*, 572 P.2d 1338, 1350 (Utah 1977).

¶52    This case presented a unique set of circumstances under which the district court abused its discretion by deciding that Marlo would not be prejudiced if tried together with James despite a judgment having already been entered on all of Brandy's claims against James. First, Brandy alleged that Marlo and James engaged in a civil conspiracy, a claim that involves joint liability: "Civil conspiracy is a basis of secondary liability. It allows a defendant to be held responsible for a tort committed by another." Restatement (Third) of Torts: Liab. for Econ. Harm § 27 cmt. a (Am. L. Inst. 2020). Additionally, civil conspiracy requires, among other things, a "meeting of the minds" between "two or more persons," *Peterson v. Delta Air Lines, Inc.*, 2002 UT App 56, ¶ 12, 42 P.3d 1253 (cleaned up), and the plaintiff is required to prove both co-conspirators' participation in the conspiracy, *see Tanner v. Pillsbury Mills*, 281 P.2d 391, 392 (Utah 1955) (concluding that an alleged co-conspirator could not be liable for conspiracy where his conduct could not be said to have constituted "active participation in a joint plan"). Marlo and James were the only two persons alleged to be co-conspirators. And, finally, of necessity the jury was instructed both (1) that James was liable for civil conspiracy and the various underlying torts and (2) that it was to determine the amount of actual damages James's conduct caused.

¶53    When the jury was instructed that James was liable for a conspiracy requiring at least one other person and Marlo was the only other person alleged to have participated in that conspiracy, there was a significant likelihood that the jury would perceive the court's instructions to mean that Marlo participated in the conspiracy. The significant likelihood that the jury would be left with that perception deprived Marlo of a fair trial.

¶54    That the jury was instructed that James's liability was based on a procedural issue rather than a factual determination of liability did not cure the problem because the jury was also instructed to determine any actual damages caused by James's conduct. The notion that James's conduct may have caused actual damages is at odds with the notion that his liability had no basis in factual wrongdoing. Thus, under the instructions given in the

joint trial, there remained a significant likelihood that the jury perceived that a determination of an actual conspiracy involving Marlo had already been made.

¶55 The instruction to the jury that it was "to make independent findings as it relates to each defendant" and that it could "make one set of findings against one defendant and a different set of findings against the other defendant" also did not solve the problem. For one thing, these instructions are inaccurate: the jury could not make its own set of findings as to each defendant because it was precluded from making any independent findings as to James's liability. More importantly, once the jury was instructed that James was liable for a conspiracy and Marlo was the only alleged co-conspirator, the potential unfairness of that instruction could not be cured by a follow-up instruction that might easily have been understood as an invitation to ignore the first. The remaining potential for confusion and unfairness was simply too great.

¶56 In short, under the particular circumstances of this case, it was not possible for Marlo to receive a fair trial on the civil conspiracy claim against him. No jury instructions—no matter how well worded—could avoid the fundamental unfairness.

¶57 The same is true with regard to Brandy's declaratory judgment claim against Marlo. Brandy brought a declaratory judgment claim against both James and Marlo, and in each one she requested the same thing: "a declaratory judgment establishing that James had a legal interest in the Property." The evidence arguably supported three possible outcomes as to Marlo's and James's interests in the Property, and the parties contended as much to the jury. Brandy argued that James had a 100% interest in the Property because his name alone appeared on the original deed and the subsequent deed to both James and Marlo was a fraudulent transfer. Alternatively, Brandy argued that if the deed to James and Marlo was not a fraudulent transfer, James had a 50% interest in the Property based on that deed. On the other hand, James and Marlo argued that Marlo had a 100%

interest in the Property based on his having paid for the Property. However, the court's grant of summary judgment against James meant that in the joint trial the jury would be instructed that the court had "previously determined that [James] had a legal interest in the [Property]." Thus, per the court's necessary instructions in a joint trial, the jury would essentially be told that the one outcome that was most favorable to Marlo was not an option. This deprived Marlo of a fundamentally fair trial on Brandy's declaratory judgment claim against him.

¶58 In sum, once the court determined not to set aside its grant of summary judgment against James, its decision not to bifurcate Marlo's and James's trials necessarily resulted in fundamental unfairness to Marlo in the trial of both of Brandy's remaining claims against him—civil conspiracy and declaratory judgment. Because the decision not to bifurcate the trial thus constituted an abuse of discretion, we vacate the judgment against Marlo, including the damages awarded against him by the jury.

### III. Guidance on Remand

¶59 We take this opportunity to provide guidance on another issue that Marlo has raised on appeal that might very well arise during retrial. *See State v. Low*, 2008 UT 58, ¶ 61, 192 P.3d 867 ("[T]here are other issues presented on appeal that will likely arise during retrial. We therefore exercise our discretion to address those issues for purposes of providing guidance on remand.").

¶60 One of Brandy's claims against James is for an alleged violation of the UVTA. Brandy appears to rely on that alleged violation as one of the possible underlying "torts" for her civil conspiracy claim. *See generally Puttuck v. Gendron*, 2008 UT App 362, ¶ 21, 199 P.3d 971 ("The claim of civil conspiracy requires, as one of its essential elements, an underlying tort." (cleaned up)).[5]

---

5. We note but do not address the unresolved issue of whether civil conspiracy requires an underlying "tort" or whether a

<span style="float:right">(continued…)</span>

On appeal, Marlo has raised the issue of whether the question of damages under the UVTA should have been presented to the jury in this case. If after remand the factfinder determines that there was a civil conspiracy involving a violation of the UVTA, it will not be appropriate for the jury to determine the amount of damages on that claim. Under the UVTA, "to the extent a transfer is avoidable in an action by a creditor[,] . . . the creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less." Utah Code § 25-6-304(2). In other words, the remedy available for a violation of the UVTA in this case is recovery of the amount of the creditor's (namely, Brandy's) underlying equitable claim in the divorce action, not some independent amount.

¶61   In Brandy's appeal in the divorce case, we stated, "The extent to which Brandy and James even have an interest in the [P]roperty is an issue that will be decided in the separate lawsuit. But to the extent they are adjudicated to have an interest in the [Property], that interest is marital property subject to equitable distribution between them." *Duffin v. Duffin*, 2022 UT App 60, ¶ 32, 511 P.3d 1240, *cert. denied*, 525 P.3d 1262 (Utah 2022). Accordingly, if on remand the factfinder determines that James had an interest in the Property and finds James or Marlo liable based on a UVTA violation, the divorce court—not the factfinder in this case—must determine the amount of Brandy's claim as James's creditor in the divorce action, *see generally Bradford v. Bradford*, 1999 UT App 373, ¶ 16, 993 P.2d 887 (holding that under the predecessor statute to the UVTA, one spouse becomes a

statutory violation can serve as the unlawful, overt act necessary to support a civil conspiracy claim. *See generally Timothy v. Pia, Anderson, Dorius, Reynard & Moss LLC*, 2018 UT App 31, ¶ 35, 424 P.3d 937 (declining to decide whether a claim for civil conspiracy requires "an underlying 'tort'" or whether "a violation of the [Uniform Fraudulent Transfer] Act could serve as the unlawful, overt act necessary to support a civil conspiracy claim"), *vacated on other grounds*, 2019 UT 69, 456 P.3d 731.

creditor of the other when there have been "recent threats of divorce"), *cert. denied*, 4 P.3d 1289 (Utah 2000), and Brandy may then recover the value of that claim.

## IV. Brandy's Appeal

¶62 Brandy alleges error regarding the punitive damages awards entered against Marlo and James. She asserts that either the district court or the jury (or both) erred with respect to these awards because the awards "were not reasonably or rationally related to the underlying damages." James and Marlo contend that Brandy has not preserved this issue and that, in any event, Brandy's argument fails on the merits. We do not reach this issue because Brandy's appeal is rendered moot by our rulings in James's and Marlo's appeals.

¶63 "Where the issues that were before the trial court no longer exist, the appellate court will not review the case. An appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." *In re adoption of L.O.*, 2012 UT 23, ¶ 8, 282 P.3d 977 (cleaned up).[6]

¶64 Because our rulings in James's and Marlo's appeals vacate all of the damages awards against James and Marlo, the issue—assuming it was preserved—of whether the punitive damages awards were adequate in light of the actual damages awards no longer exists. The controversy in Brandy's appeal is therefore eliminated, and the relief she requests, if granted, would be of no legal effect. We therefore dismiss Brandy's appeal as moot.

---

6. Although the parties did not raise the issue of mootness, "the court may . . . raise the issue of mootness sua sponte to further a core judicial policy of limiting the scope of its power to issues in controversy." *In re adoption of L.O.*, 2012 UT 23, ¶ 7, 282 P.3d 977 (cleaned up).

CONCLUSION

¶65　Brandy's summary judgment motion did not establish a basis for judgment as a matter of law against James. Therefore, the district court erred by granting summary judgment against him. We reverse that grant of summary judgment and vacate the subsequent damages awards and declaratory judgment against James.

¶66　After the district court granted summary judgment against James, it abused its discretion by not bifurcating James's and Marlo's trials. Accordingly, we vacate the jury verdict and resulting judgment against Marlo, including the damages awards and declaratory judgment entered against him.

¶67　Because our resolution of James's and Marlo's appeals results in vacation of the punitive damages awards Brandy contests on appeal, we dismiss Brandy's appeal as moot.

—————